### H AND L CHEVROLET, INC., ET AL. *v.* BERKLEY INSURANCE COMPANY
### (AC 27670)

Flynn, C. J., and DiPentima and Pellegrino, Js.

430

Argued April 16—officially released September 23, 2008

*Joseph B. Burns*, with whom, on the brief, was *Shannon C. Kief*, for the appellant (defendant).

*Jan A. Marcus*, for the appellees (plaintiffs).

*Opinion*

DiPENTIMA, J. The defendant, Berkley Insurance Company,[1] appeals from the judgment of the trial court granting the petition of the plaintiffs, H & L Chevrolet, Inc. (H & L), and A & W Insurance Company (A & W), for a bill of discovery. The defendant claims that the trial court improperly concluded that the plaintiffs had met their burden of proving that probable cause existed to bring a potential cause of action against the defendant. We agree that the facts in this case do not establish probable cause and, accordingly, reverse the judgment of the trial court.

The relevant facts, as alleged by the plaintiffs and found by the court, are not in dispute. H & L is a Connecticut corporation engaged in the sale of automobiles. A & W is a foreign corporation primarily engaged in providing coverage for service repairs under extended warranty contracts between H & L and its customers

[1] During the time period relevant to this appeal, the defendant was known by its former name, Signet Star Reinsurance Company.

who purchase used cars. Under the terms of the extended warranty contracts, the plaintiffs agreed to cover the cost of certain repairs to vehicles sold by H & L when those repairs accrued after the expiration of the vehicle manufacturer's warranty.

To reduce the risk that it acquires pursuant to the extended warranty contracts, H & L purchased an insurance policy from National Warranty Insurance Group (National Warranty). The insurance policy was brokered by James Hoffman, chief executive officer of Resources Management Insurance Group. Under the terms of the insurance policy, National Warranty agreed to indemnify H & L for the cost of all claims made pursuant to the extended warranty contracts. H & L made premium payments, and customers filed claims under the extended warranty program through National Warranty's authorized administrator, a company known as Smart Choice.

At the time H & L purchased the insurance policy from National Warranty on December 5, 2000, the defendant had agreed, pursuant to a reinsurance policy, to indemnify National Warranty for certain losses that National Warranty might incur as a result of claims made under insurance policies issued by National Warranty, including the insurance policy issued to H & L. Representatives of National Warranty and Smart Choice, but not of the defendant, had informed Hoffman of the existence of the reinsurance policy, and Hoffman, in turn, informed H & L. The existence of the reinsurance policy was a substantial factor in H & L's decision to purchase insurance through National Warranty because General Motors Acceptance Corporation, as a condition of providing to H & L's customers financing toward the purchase of cars and extended warranties, required such a reinsurance policy to be in place. At the time it issued the insurance policy to H & L, however,

National Warranty was aware that the reinsurance policy issued by the defendant was scheduled to expire on January 1, 2001, and that the defendant did not intend to renew the reinsurance policy. Neither National Warranty nor the defendant communicated this information to either Hoffman or H & L.

During the years 2000 to 2003, H & L entered into approximately 400 extended warranty contracts with its customers. From December, 2000, through May, 2003, National Warranty honored its obligations to H & L under the insurance policy and timely paid claims under the extended warranty contracts. Sometime in 2003, however, National Warranty filed a petition for bankruptcy protection and was declared insolvent. National Warranty thereafter ceased making payments to H & L for claims under the extended warranty contracts, causing H & L and A & W to bear the cost of such claims. The plaintiffs sought reimbursement from the defendant, as the reinsurer of National Warranty, but the defendant rejected their demands.

On August 11, 2004, the plaintiffs filed a petition for a bill of discovery, seeking from the defendant disclosure of documents and other information concerning its reinsurance agreement with National Warranty. The plaintiffs' petition alleges that the defendant, pursuant to the terms of the reinsurance contract with National Warranty, may be responsible for reimbursing claims made under the extended warranty contracts. The plaintiffs further allege that discovery is necessary to ascertain the viability and scope of any cause of action, including claims for breach of contract, fraud, unfair trade practices or unfair insurance practices, that the plaintiffs later may assert against the defendant by virtue of the defendant's failure to reimburse the plaintiffs. After a hearing on February 27, 2006, the court granted the plaintiffs' petition. This appeal followed.

The defendant claims that the court improperly concluded that the plaintiffs had demonstrated probable cause to bring a potential cause of action against it. Specifically, the defendant argues that the evidence adduced at the February 27, 2006 hearing failed to establish probable cause for the plaintiffs to bring an action for (1) breach of contract, (2) fraud or (3) violation of the Connecticut Unfair Trade Practices Act (CUTPA), General Statutes § 42-110a et seq.[2] We agree.

Before addressing the defendant's arguments, we briefly discuss the nature of a bill of discovery and set forth our standard of review. "The bill of discovery is an independent action in equity for discovery, and is designed to obtain evidence for use in an action other than the one in which discovery is sought. . . . As a power to enforce discovery, the bill is within the inherent power of a court of equity that has been a procedural tool in use for centuries. . . . The bill is well recognized and may be entertained notwithstanding the statutes and rules of court relative to discovery. . . . Furthermore, because a pure bill of discovery is favored in equity, it should be granted unless there is some well founded objection against the exercise of the court's discretion. . . .

---

[2] To the extent that the plaintiffs claim that the evidence supported probable cause to bring an action in quasi-contract, or some other cause of action not identified in their petition, we reject their claim. "[T]he right of a plaintiff to recover is limited by the allegations of the complaint . . . and any judgment should conform to the pleadings, the issues and the prayers for relief." (Internal quotation marks omitted.) *Journal Publishing Co.* v. *Hartford Courant Co.*, 261 Conn. 673, 686, 804 A.2d 823 (2002). Accordingly, we need not consider whether the evidence established probable cause to believe that the plaintiffs had a cause of action under a theory not identified in their petition. See id. (improper for court to find probable cause of tortious interference with contractual arrangements when no such possible cause of action alleged in petition). For this reason, we also reject the plaintiffs' argument that they need not demonstrate that their causes of action lie against the defendant but that they need only to show probable cause that they have a viable claim against anyone, in support of which discovery from the defendant would be helpful.

"To sustain the bill, the petitioner must demonstrate that what he seeks to discover is material and necessary for proof of, or is needed to aid in proof of or in defense of, another action already brought or about to be brought. . . . Although the petitioner must also show that [it] has no other adequate means of enforcing discovery of the desired material, [t]he availability of other remedies . . . for obtaining information [does] not require the denial of the equitable relief . . . sought. . . . This is because a remedy is adequate only if it is one which is specific and adapted to securing the relief sought conveniently, effectively and completely. . . . The remedy is designed to give facility to proof. . . .

"Discovery is confined to facts material to the plaintiff's cause of action and does not afford an open invitation to delve into the defendant's affairs. . . . A plaintiff must be able to demonstrate good faith as well as probable cause that the information sought is both material and necessary to [its] action. . . . A plaintiff should describe with such details as may be reasonably available the material [it] seeks . . . and should not be allowed to indulge a hope that a thorough ransacking of any information and material which the defendant may possess would turn up evidence helpful to [its] case. . . . What is reasonably necessary and what the terms of the judgment require call for the exercise of the trial court's discretion. . . .

"The plaintiff who brings a bill of discovery must demonstrate by detailed facts that there is probable cause to bring a potential cause of action. Probable cause is the knowledge of facts sufficient to justify a reasonable man in the belief that he has reasonable grounds for presenting an action. . . . Its existence or nonexistence is determined by the court on the facts found. . . . Moreover, the plaintiff who seeks discovery in equity must demonstrate more than a mere suspicion; he must also show that there is some describable

sense of wrong." (Citation omitted; internal quotation marks omitted.) *Journal Publishing Co.* v. *Hartford Courant Co.*, 261 Conn. 673, 680–82, 804 A.2d 823 (2002). A distinction exists, however, "between a would-be plaintiff having to demonstrate the need for the information to determine whether a particular cause of action is worthy of being pursued and a plaintiff having to prove definitively that he has a cause of action and that he will probably prevail ultimately at the trial on the merits." *Berger* v. *Cuomo*, 230 Conn. 1, 9, 644 A.2d 333 (1994). "Whether particular facts constitute probable cause is a question of law." (Internal quotation marks omitted.) *Journal Publishing Co.* v. *Hartford Courant Co.*, supra, 682.

## I

The defendant first argues that the plaintiffs failed to establish probable cause to bring an action for breach of contract. The parties agree that no privity of contract exists between them and that to prevail on a claim for breach of contract, the plaintiffs first must establish themselves as third party beneficiaries of a reinsurance contract between the defendant and National Warranty. The defendant argues, however, that the plaintiffs failed to demonstrate probable cause that the defendant breached such a contract. The defendant further argues that even if it was in breach of a reinsurance contract with National Warranty, the plaintiffs failed to demonstrate probable cause that they were third party beneficiaries. We agree with the defendant's first argument, and, therefore, we need not address the second.[3]

---

[3] If National Warranty has no reasonable ground for bringing a breach of contract action against the defendant, then the plaintiffs would have no claim as third party beneficiaries. See, e.g., 13 S. Williston, Contracts (4th Ed. Lord 2000) § 37:29, p. 188 (third party beneficiary in ordinary contract subject to limitations of contract terms as he has no greater rights than are provided in contract itself).

We begin our discussion by noting that the plaintiffs' petition alleges that discovery is necessary in order to ascertain whether the defendant's failure to reimburse the plaintiffs for claims under the extended warranty contracts, which National Warranty had agreed to insure, gave rise to a breach of contract claim. To obtain the discovery they seek, the plaintiffs must demonstrate probable cause with respect to each element of their potential breach of contract claim. See id., 685–95. "The elements of a breach of contract action are the formation of an agreement, performance by one party, breach of the agreement by the other party and damages." (Internal quotation marks omitted.) *Pelletier* v. *Galske*, 105 Conn. App. 77, 81, 936 A.2d 689 (2007), cert. denied, 285 Conn. 921, 943 A.2d 1100 (2008).

We further observe that the plaintiffs, in fact, received part of the discovery that they had requested. A reinsurance contract between the defendant and National Warranty was introduced as an exhibit at the February 27, 2006 hearing. In addition, the defendant introduced copies of two letters, one to National Warranty and the other to the intermediary who brokered the reinsurance contract. Both letters from the defendant indicate that the defendant no longer would provide reinsurance to National Warranty after January 1, 2001.

In addition, we reiterate the court's finding that National Warranty paid claims under the extended warranty contracts until May, 2003. The court also found that although initial premiums paid by H & L to National Warranty included additional amounts for reinsurance, no evidence was adduced as to whether those additional amounts continued after 2001. Neither party disputes the propriety of those findings.

With this background in mind, we are not persuaded that the plaintiffs have probable cause to bring a breach of contract action against the defendant. According to

the unambiguous terms of its reinsurance agreement with National Warranty,[4] the defendant agreed "to indemnify [National Warranty] in respect of the net excess liability . . . which may accrue to [National Warranty] as a result of any loss or losses which may occur under all [warranty] policies written or renewed by [National Warranty] during the term of this agreement [January 1, 1998, to January 1, 2001] . . . ." The reinsurance agreement further provides that if it is not renewed on January 1, 2001, National Warranty "has the option to purchase 'run-off' coverage . . . for the unexpired warranties for claims occurring on or after January 1, 2001. The coverage will remain in effect for a period of three years from January 1, 2001 or until all warranties are expired, whichever occurs first." When read together, these provisions clearly express the defendant's intention to indemnify National Warranty only for warranty claims arising prior to January 1, 2001, unless National Warranty exercised its option to purchase "run-off" coverage.[5]

The plaintiffs' arguments, both before the trial court and in their brief to this court, presuppose the fact that National Warranty had a right, pursuant to the reinsurance agreement, to demand performance from the defendant on or after May, 2003.[6] None of the facts

---

[4] See *O'Connor* v. *Waterbury*, 286 Conn. 732, 744, 945 A.2d 936 (2008) (where contract clear and unambiguous within its four corners, intent of parties is question of law requiring plenary review and contract to be given effect according to terms).

[5] See *Connecticut Medical Ins. Co.* v. *Kulikowski*, 286 Conn. 1, 12–13, 942 A.2d 334 (2008) ("we must look at the contract as a whole, consider all relevant portions together and, if possible, give operative effect to every provision in order to reach a reasonable overall result" [internal quotation marks omitted]).

[6] In their brief, the plaintiffs state that the hearing on their petition was not "an opportunity for the defendant to morph [their] discovery requests into a summary judgment type of proceeding." We see no reason, however, and the plaintiffs offer none, why the documents introduced as exhibits at the February 27, 2006 hearing may not be probative of the plaintiffs' lack of probable cause simply because the plaintiffs dispute the legal effect of those documents.

found by the court, however, supported more than a mere suspicion that National Warranty had exercised its option to purchase run-off coverage. Moreover, there was no evidence that the defendant's obligations were extended beyond January 1, 2001, by some other agreement. Without the run-off coverage or a separate reinsurance agreement, National Warranty had no claim against the defendant for losses accruing after January 1, 2001. The plaintiffs, in turn, have no third party beneficiary claim against the defendant for extended warranty claims that arose during or after May, 2003. See footnote 3.

We further conclude that none of the facts of this case support a finding of probable cause to believe the defendant breached a contractual obligation to notify the plaintiffs of its decision not to provide National Warranty with reinsurance after January 1, 2001. None of the expressed terms of the agreement provided for notice to the plaintiffs in the event of the cancellation or termination of the agreement. The relevant terms of the reinsurance agreement provided only that "[a]ll communications (including but not limited to notices . . .) relating thereto shall be transmitted . . . through [the reinsurance intermediary]."

Further, the defendant had no duty, pursuant to statute, to notify the plaintiffs of its intent to cease reinsuring National Warranty. In its memorandum of decision, the court observed that General Statutes §§ 38a-66 to 38a-67b require certain reinsurance policies to be provided to the commissioner of insurance and that the commissioner be apprised by the reinsurance carrier as to any nonrenewal, cancellation or revision of those certain reinsurance policies. The court further noted that the Reinsurance Intermediary Act, General Statutes § 38a-760 et seq., outlines the obligations and require-

ments of a reinsurance intermediary who solicits, negotiates or places reinsurance coverage.

"[A]lthough we incorporate a law as if an express term of the contract to construe the scope or validity of an obligation already embraced within the terms of the contract, we do not incorporate the law to create a substantive obligation where none previously had existed." *Deming* v. *Nationwide Mutual Ins. Co.*, 279 Conn. 745, 781, 905 A.2d 623 (2006). None of the statutes cited by the court obligated the defendant to notify anyone other than the commissioner of insurance and the reinsurance intermediary of its decision to end its business relationship with National Warranty. Further, the record contains no evidence that the defendant had failed to comply with those statutes. Accordingly, the plaintiffs failed to establish probable cause to bring a breach of contract action against the defendant.

## II

The defendant next argues that the plaintiffs failed to establish probable cause to bring an action for fraud. We agree.

Our conclusion derives from the following undisputed facts. The only statement on which the plaintiffs claim that they detrimentally relied was the representation that the defendant was providing reinsurance coverage for National Warranty. On the basis of that representation, the plaintiffs decided to sell and engage National Warranty to insure the extended warranty contracts. At the time that representation was made to the plaintiffs in December, 2000, however, the defendant, in fact, was providing reinsurance coverage to National Warranty. Furthermore, that representation was made to the plaintiffs, not by the defendant, but by Hoffman, who also did not communicate directly with the defendant. The defendant made no statements, true or false, to the plaintiffs prior to May, 2003.

"Under the common law . . . it is well settled that the essential elements of fraud are: (1) a false representation was made as a statement of fact; (2) it was untrue and known to be untrue by the party making it; (3) it was made to induce the other party to act upon it; and (4) the other party did so act upon that false representation to his injury." (Internal quotation marks omitted.) *Capp Industries, Inc.* v. *Schoenberg*, 104 Conn. App. 101, 116, 932 A.2d 453, cert. denied, 284 Conn. 941, 937 A.2d 696, 697 (2007). Also, "[i]t has been repeatedly held that where a party makes false representations to another with the intent or knowledge that they be exhibited or repeated to a third party for the purpose of deceiving him, the third party, if so deceived to his injury, can maintain an action in tort against the party making the false statements . . . ." (Internal quotation marks omitted.) *Giulietti* v. *Giulietti*, 65 Conn. App. 813, 843, 784 A.2d 905, cert. denied, 258 Conn. 946, 947, 788 A.2d 95, 96, 97 (2001).

The facts of this case are not sufficient to justify a reasonable person in the belief that there are reasonable grounds for presenting a fraud claim. First, any representation prior to January 1, 2001, that the defendant was reinsuring National Warranty was true. Moreover, to the extent that the plaintiffs relied on misrepresentations that the defendant would continue to reinsure National Warranty after January 1, 2001, the record belies any allegation that such a statement had originated from the defendant. The documents submitted at the hearing unequivocally expressed the defendant's intention to end its business relationship with National Warranty on that date. We conclude that the plaintiffs lacked probable cause to allege that the defendant had made a false representation to them, either directly or through a third party. Accordingly, the court improperly granted the plaintiffs' petition on that basis.

## III

The defendant last argues that the plaintiffs failed to establish probable cause to bring a claim under CUTPA.[7] We agree.

"It is well settled that in determining whether a practice violates CUTPA we have adopted the criteria set out in the cigarette rule by the federal trade commission for determining when a practice is unfair: (1) [W]hether the practice, without necessarily having been previously considered unlawful, offends public policy as it has been established by statutes, the common law, or otherwise—whether, in other words, it is within at least the penumbra of some common law, statutory, or other established concept of unfairness; (2) whether it is immoral, unethical, oppressive, or unscrupulous; (3) whether it causes substantial injury to consumers [competitors or other businesspeople]. . . .

"All three criteria do not need to be satisfied to support a finding of unfairness. A practice may be unfair because of the degree to which it meets one of the criteria or because to a lesser extent it meets all three. . . . Thus a violation of CUTPA may be established by showing either an actual deceptive practice . . . or a

---

[7] The defendant, citing *Mead* v. *Burns*, 199 Conn. 651, 509 A.2d 11 (1986), also argues that the plaintiffs failed to establish probable cause to raise a claim under the Connecticut Unfair Insurance Practices Act (CUIPA), General Statutes § 38a-815 et seq., because there is no independent cause of action for violations of CUIPA. We disagree with the defendant's broad interpretation of our Supreme Court's holding in *Mead*.

In *Mead*, the court held that insurance practices are the subject of two regulatory acts, CUIPA and CUTPA, and that a private cause of action exists under CUTPA to enforce CUIPA violations. *Mead* v. *Burns*, supra, 199 Conn. 663. Whether CUIPA allows a private cause of action independent of CUTPA remains an open question. See *Carford* v. *Empire Fire & Marine Ins. Co.*, 94 Conn. App. 41, 52–53, 891 A.2d 55 (2006).

Although the defendant has misconstrued the holding of *Mead*, we conclude nonetheless that *Mead* lends adequate support for the defendant's position. We conclude that without legal authority, independent of CUTPA, to bring a private cause of action under CUIPA, the plaintiffs lacked probable cause to raise such a claim.

practice amounting to a violation of public policy. . . . Furthermore, a party need not prove an intent to deceive to prevail under CUTPA." (Internal quotation marks omitted.) *Journal Publishing Co.* v. *Hartford Courant Co.*, supra, 261 Conn. 695–96.

As we stated in parts I and II, no reasonable ground exists to support an allegation that the defendant had failed to conform its conduct to the law or to the terms of its reinsurance agreement with National Warranty. Further, the facts presented by the plaintiffs and found by the court lend no support for the plaintiffs' suspicions that the defendant acted unfairly, immorally, unethically, oppressively or unscrupulously either in deciding not to renew its reinsurance agreement with National Warranty or in deciding not to accede to the plaintiffs' demands for reimbursement. Finally, although the lack of reimbursement for claims under the extended warranty contracts has resulted in substantial injury to the plaintiffs, no probable cause exists to conclude that those injuries resulted from the defendant's business practices. Accordingly, we conclude that the plaintiffs lacked probable cause to raise a CUTPA claim against the defendant.

The judgment is reversed and the case is remanded with direction to deny the plaintiffs' petition for a bill of discovery.

In this opinion the other judges concurred.