IN RE PROBATE APPEAL OF CADLE COMPANY

IN RE PROBATE APPEAL OF DAVID
D'ADDARIO, EXECUTOR (ESTATE
OF F. FRANCIS D'ADDARIO),
ET AL.*
(AC 31673)

DiPentima, C. J., and Robinson and Borden, Js.

---

* The consolidated appeals in this case were originally filed with the following captions: *Cadle Company* v. *Appeal from Probate of the Town of Trumbull* and *David D'Addario et al.* v. *Appeal from Probate of the Town of Trumbull*. The captions have been changed to reflect that the Probate Appeal is not a party. It should be noted that the microfiche version of the Appellate Court Record and Briefs in this case will be found under the original captions.

Argued November 17, 2010—officially released July 5, 2011

*C. Donald Neville*, for the appellant (Cadle Company).

*David W. Rubin*, with whom, on the brief, was *Andrew J. Soltes, Jr.*, for the appellees (David D'Addario, executor of the estate of F. Francis D'Addario, et al.).

*Opinion*

BORDEN, J. The sole question we confront in these two consolidated appeals is whether the Probate Court has jurisdiction in connection with an accounting in a decedent's estate to permit a creditor of the estate to conduct discovery into the complex management and business operations of the estate's assets, including the business judgments of its executors. We answer that question in the affirmative.

The Probate Court for the district of Trumbull, in connection with an interim accounting filed by the executors of the estate of F. Francis D'Addario (estate), David D'Addario and Lawrence D'Addario (executors), issued a discovery order permitting broad discovery by Cadle Company (Cadle), an unsecured creditor of the estate. Specifically, the Probate Court permitted Cadle to conduct discovery, subject to the following traditional limitations: the power of the court to quash a subpoena "if it is unreasonable and oppressive or if it seeks production of materials [that are] not . . . both material and within the possession of the person to be examined"; any subpoena may not be used "for the purpose of conducting a fishing expedition into the papers of a party or a stranger to the proceedings," must be "sufficiently particularized so that the documents sought may be readily identified," and may not be "on

its face . . . too broad and sweeping"; and any examination may not be "proposed in bad faith or so as to annoy, embarrass or oppress the party who is subject to the inquiry" and may not "search for the irrelevant."

The executors and Cadle filed separate appeals to the Superior Court from the discovery order. The appeals were consolidated. The trial court ruled that Cadle could conduct discovery into financial matters contained in the accounting in question and, therefore, affirmed the order of the Probate Court to the extent that the order permitted discovery. The trial court also ruled, however, that the breadth of the discovery order was beyond the jurisdiction of the Probate Court and, therefore, remanded the matters to the Probate Court for further proceedings. Cadle appealed to this court.

Cadle claims that, in rendering its judgments, the trial court improperly considered our Supreme Court's decision in *Carten* v. *Carten*, 153 Conn. 603, 219 A.2d 711 (1966), to be controlling on this issue. We agree with Cadle and, accordingly, reverse the judgments of the trial court.

The following facts and procedural history are relevant to our resolution of this appeal. Cadle is an unsecured creditor[1] of the estate. The decedent died in 1986, and the executors of the estate were appointed.[2] In July,

_____

[1] In September, 1994, Cadle was assigned a $1 million promissory note from a creditor of the decedent. See *Cadle Co.* v. *D'Addario*, 111 Conn. App. 80, 81, 957 A.2d 536 (2008). As a holder of the note, Cadle is a creditor of the estate and has standing to participate in the estate. See *Cadle Co.* v. *D'Addario*, 268 Conn. 441, 443–49, 844 A.2d 836 (2004).

[2] Initially, the record of this case did not contain a copy of the inventory of the estate or of the accounting in question. Subsequently, we ordered the parties to file, in lieu of the inventory, which we were advised consisted of 699 pages, a copy of the Form 706 Federal Tax Return. That filing discloses that the gross taxable estate for federal estate tax purposes was $92,009,459 as of the date of death of the decedent. A minor portion of the estate consisted of survivorship property, however, which, of course, would not be subject to the jurisdiction of the Probate Court. The estate includes eighty-four parcels of real property and the stock of fifty-one closely held corporations. We also ordered the parties to file a copy of the accounting

2001, at the request of the Probate Court, the executors submitted an interim accounting of the estate for the period covering December 1, 1992, to November 30, 1993. Cadle filed an objection to the Probate Court's acceptance of the interim accounting and a motion for permission to conduct discovery with respect to concerns it had regarding the accuracy of the accounting.[3] The executors objected to Cadle's motion for discovery and, in response, the Probate Court directed the parties to brief, inter alia, the following issues: (1) whether Cadle had a right to discovery in the Probate Court, and (2) if there were such a right, whether it was strictly limited in scope? The Probate Court determined that Cadle had the right to conduct discovery with respect to the financial representations in the accounting and, of particular relevance to this appeal, that the scope of the discovery was limited only by the rules of practice applicable to ordinary civil proceedings.

As noted previously, both parties appealed from the Probate Court's order to the trial court, and their appeals were consolidated.[4] In the trial court, the executors claimed that any right to discovery was severely

in question, which consists of ninety-five pages and hundreds of transactions and entries.

[3] More specifically, Cadle's objection to the accounting, a copy of which the executors supplied to us as an appendix to their brief in this court, notes that Cadle had retained the services of a certified public accountant to evaluate the accounting, the form 706 and a certain personal financial statement of the decedent prepared five months before his death. The accountant concluded that there were significant questions regarding the documents, such as: the executors' accounting processes; the completeness of the documents; the valuations used by the executors, including a $70,000,000 discrepancy between the decedent's predeath financial statement and the form 706; the propriety of some transactions, including possible insider transactions; and the reporting or nonreporting of income. In addition, the accountant indicated that, because the accounting consisted of line items of many transactions, it did not contain sufficient information to ferret out any wrongdoing; thus, additional information was necessary.

[4] The issues raised by Cadle were not addressed by the trial court and are not relevant to this appeal.

limited under Connecticut law, as the jurisdiction of probate courts does not extend to the review of complex management and business operations of an estate.[5] The trial court disagreed, however, with the Probate Court's ruling that discovery in probate proceedings was only limited to the extent of our ordinary civil practice rules. Relying on *Carten* v. *Carten*, supra, 153 Conn. 615–16, the trial court concluded that the "jurisdiction of the Probate Court in matters of accounting does not extend to the adjudication and review of complex management and business operations of estate assets and the business judgments of its fiduciaries." The trial court concluded, therefore, that Cadle's discovery requests, insofar as they pertained to the complex financial matters of management and business operations of the estate, or the business judgments of the executors, "should have been denied on jurisdictional grounds." Because the trial court lacked specific information regarding the subject matter of the discovery sought, it remanded the case to the Probate Court with direction to determine which of Cadle's discovery requests, in accordance with its decision, were permissible. This appeal by Cadle followed.

On appeal, Cadle claims that the trial court improperly concluded that it was not entitled, on jurisdictional grounds, to discovery into the complex financial management of the estate's assets and the business judgments of the executors. Cadle argues that, in reaching its decision, the court improperly concluded that our Supreme Court's holding in *Carten* is dispositive on this issue. We agree.

We begin our analysis by setting forth the applicable law regarding the jurisdiction of our probate courts.

---

[5] The executors also reasserted their claim that there was no discovery into the financial matters contained in the accounting available in the Probate Court. The trial court rejected that claim, and they have not reasserted it in this court.

"The Probate Court is a court of limited jurisdiction prescribed by statute, and it may exercise only such powers as are necessary to the performance of its duties. . . . As a court of limited jurisdiction, it may act only when the facts and circumstances exist upon which the legislature has conditioned its exercise of power. . . . Such a court 'is without jurisdiction to act unless it does so under the precise circumstances and in the manner particularly prescribed by the enabling legislation.' *Marcus' Appeal from Probate*, 199 Conn. 524, 528–29, 509 A.2d 1 (1986)." (Citations omitted.) *Heussner* v. *Hayes*, 289 Conn. 795, 802–803, 961 A.2d 365 (2008). Additionally, the trial court's conclusion that the Probate Court lacked jurisdiction over the adjudication and review of the management of the estate's assets and the business judgments of the executors involves a question of law, which we review under the plenary standard of review. See id., 802.

The next step of our analysis requires a discussion of the Supreme Court's decision in 1966 in *Carten*. In that case, the decedent had established a testamentary trust, the corpus of which consisted of almost all of the shares of stocks, held by the decedent upon his death of a closely held corporation, which was engaged in the concrete and sand and gravel businesses. *Carten* v. *Carten*, supra, 153 Conn. 605–607. The trustees were two of the testator's children, who also served as officers and directors of the corporation. Id., 607. The Probate Court approved the trustees' final account, from which the plaintiffs, who were two other children of the testator, appealed to the Superior Court, alleging that the accounting was incomplete, that it did not disclose whether the net income was fully accounted for, that it did not disclose how the net income was computed, that the trustees failed to manage the corporation for the best interests of the beneficiaries of the trust,

and that they had failed to disclose the records of the management of the corporation. Id., 607–608.

While that appeal was pending, the plaintiffs brought a separate action in the Superior Court for discovery, in the form of "an action in equity ancillary to the [pending appeal from the Probate Court]." Id., 611. That was the action before the Supreme Court, which characterized it as "a pure bill of discovery as distinguished from a bill of discovery and relief." Id. The trial court granted relief to the plaintiffs to the extent "of directing that the plaintiffs be permitted to examine the corporation's annual balance sheets, annual profit and loss statements and the general ledger, covering only the period since the date of the last preceding trust account, which had been accepted and allowed by the Probate Court and from which no appeal [had been] taken." Id., 609. Both parties appealed to the Supreme Court, the defendants claiming that the plaintiffs were not entitled to any discovery, and the plaintiffs claiming entitlement to much broader discovery than the court had allowed. Id., 609–10.

"The bill of discovery is an independent action in equity for discovery, and is designed to obtain evidence for use in an action other than the one in which discovery is sought." (Internal quotation marks omitted.) *H & L Chevrolet, Inc.* v. *Berkley Ins. Co.*, 110 Conn. App. 428, 433, 955 A.2d 565 (2008). Because this action was merely ancillary to the pending appeal from the Probate Court's approval of the trustees' account, the jurisdiction of the Superior Court was coincidental with that of the Probate Court—neither more nor less. *Carten* v. *Carten*, supra, 153 Conn. 614.

Faced with this procedural posture, and with the well established principle that the Probate Court is a court of limited jurisdiction, based solely on statute; id., 614–15; our Supreme Court held that the jurisdiction

of the Probate Court "has not . . . been extended to the adjudication of complex legal questions which pertain to the management and operations of a business corporation. Problems of internal administration, proper corporate reserves for working capital and replacement of wasting assets, dividend policy, exercise of business judgment and assumption of business risks may, in a proper case, be the subject of the broad jurisdiction of a general court of equity. . . . They are not within the limited jurisdiction of the Probate Court in allowing the account of a testamentary trustee. Parenthetically, it is pertinent to note that the allowance by a probate court of the account of a testamentary trustee does not constitute an adjudication of any matter not apparent on the face of the account nor bar a beneficiary from a subsequent action in the Superior Court to recover damages for a breach of trust by a trustee." (Citation omitted.) Id., 615. "In view of the limited jurisdiction of the court in the original action, the discovery in this ancillary proceeding must be limited to matters pertinent only to the trust account, such as the allegations that the account is incomplete and that it fails to show whether all of the income of the trust is accounted for, how the net income of the trust was computed and what receipts and what disbursements were allocated to principal and what to income. For this limited purpose, an examination of the annual balance sheets and annual profit and loss statements of the corporation will suffice to disclose what the corporation records show was distributed to the trustees and therefore subject to account by them. Under the circumstances, it was within the court's discretion to order a disclosure of this information. On the other hand, an examination of the general ledger of the corporation is not pertinent to such a properly limited discovery, and the trial court should not have ordered its disclosure." Id., 616.

*Carten,* then, stands for the general proposition that, in a probate account proceeding, the jurisdiction of the Probate Court, insofar as discovery is concerned, is much more limited than would be the jurisdiction of a general court of equity such as the Superior Court. Whereas in a proper case before the Superior Court complex legal questions pertaining to the management and operations of a business corporation may "be the subject of the broad jurisdiction of a general court of equity"; id., 615; such matters "are not within the limited jurisdiction of the Probate Court in allowing the account of a testamentary trustee." Id.

On the basis of this general proposition derived from *Carten,* the trial court in the present case limited the extent of the discovery available to Cadle, as indicated previously. We conclude, however, that because of subsequent legislative action, *Carten* is no longer good law.

General Statutes § 45a-175[6] is entitled "Jurisdiction of accounts of fiduciaries. Appointment of auditor to

[6] General Statutes § 45a-175 provides: "(a) Courts of probate shall have jurisdiction of the interim and final accounts of testamentary trustees, trustees appointed by the courts of probate, conservators, guardians, persons appointed by probate courts to sell the land of minors, executors, administrators and trustees in insolvency, and, to the extent provided for in this section, shall have jurisdiction of accounts of the actions of trustees of inter vivos trusts and attorneys-in-fact acting under powers of attorney.

"(b) A trustee or settlor of an inter vivos trust or an attorney-in-fact or the successor of the trustee, settlor or attorney-in-fact or the grantor of such power of attorney or his legal representative may make application to the court of probate for the district where the trustee, or any one of them, or the attorney-in-fact has any place of business or to the court of probate for the district where the trustee or any one of them or the settlor or the attorney-in-fact or the grantor of the power resides or, in the case of a deceased settlor or grantor, to the court of probate having jurisdiction over the estate of the settlor or grantor or for the district in which the settlor or grantor resided immediately prior to death for submission to the jurisdiction of the court of an account for allowance of the trustee's or attorney's actions under such trust or power.

"(c) (1) Any beneficiary of an inter vivos trust may petition a court of probate having jurisdiction under this section for an accounting by the trustee or trustees. The court may, after hearing with notice to all interested parties, grant the petition and require an accounting for such periods of time as it determines are reasonable and necessary on finding that: (A) The beneficiary has an interest in the trust sufficient to entitle him to an

examine accounts, when." It lodges in the Probate Court the jurisdiction over the interim and final accounts of all fiduciaries in that court. More specifically, § 45a-175 (a) provides as follows: "Courts of probate shall have jurisdiction of the interim and final accounts of testamentary trustees, trustees appointed by the courts of probate, conservators, guardians, persons appointed by

accounting, (B) cause has been shown that an accounting is necessary, and (C) the petition is not for the purpose of harassment.

"(2) A court of probate shall have jurisdiction to require an accounting under subdivision (1) of subsection (c) of this section if (A) a trustee of the trust resides in its district, (B) in the case of a corporate trustee, the trustee has any place of business in the district, (C) any of the trust assets are maintained or evidences of intangible property of the trust are situated in the district, or (D) the settlor resides in the district or, in the case of a deceased settlor, resided in the district immediately prior to death.

"(3) As used in subdivision (1) of subsection (c) of this section, 'beneficiary' means any person currently receiving payments of income or principal from the trust, or who may be entitled to receive income or principal or both from the trust at some future date, or the legal representative of such person.

"(d) The action to submit an accounting to the court, whether by an inter vivos trustee or attorney acting under a power of attorney or whether pursuant to petition of another party, shall not subject the trust or the power of attorney to the continuing jurisdiction of the Probate Court.

"(e) If the court finds such appointment to be necessary and in the best interests of the estate, the court upon its own motion may appoint an auditor to be selected from a list provided by the Probate Court Administrator, to examine accounts over which the court has jurisdiction under this section, except those accounts on matters in which the fiduciary or cofiduciary is a corporation having trust powers. The Probate Court Administrator shall promulgate regulations in accordance with section 45a-77 concerning the compilation of a list of qualified auditors. Costs of the audit may be charged to the fiduciary, any party in interest and the estate, in such proportion as the court shall direct if the court finds such charge to be equitable. Any such share may be paid from the fund established under section 45a-82, subject to the approval of the Probate Court Administrator, if it is determined that the person obligated to pay such share is unable to pay or to charge such amount to the estate would cause undue hardship.

"(f) Upon the allowance of any such account, the court shall determine the rights of the fiduciaries or the attorney-in-fact rendering the account and of the parties interested in the account, subject to appeal as in other cases. The court shall cause notice of the hearing on the account to be given in such manner and to such parties as it directs.

"(g) In any action under this section, the Probate Court shall have, in addition to powers pursuant to this section, all the powers available to a judge of the Superior Court at law and in equity pertaining to matters under this section."

probate courts to sell the land of minors, executors, administrators and trustees in insolvency, and, to the extent provided for in this section, shall have jurisdiction of accounts of the actions of trustees of inter vivos trusts and attorneys-in-fact acting under powers of attorney." If that were all that we had before us as a statutory matter, we would be inclined to affirm the trial court's limitation on discovery on the basis of *Carten*. That is not all that we have before us, however.

In 1997, more than thirty years after *Carten* was decided, the legislature enacted No. 97-90, § 3 of the 1997 Public Acts, codified at subsection (g) of § 45a-175, which provides as follows: "In any action under this section, the Probate Court shall have, in addition to powers pursuant to this section, all the powers available to a judge of the Superior Court at law and in equity pertaining to matters under this section." In our view, the interpretation and application of this provision controls the present case. Moreover, the plain meaning and application of that provision leads us to conclude that it legislatively overruled *Carten*.

"Because issues of statutory construction are questions of law, we review the trial court's conclusions as to these issues de novo, under well settled principles. *Southern New England Telephone Co.* v. *Cashman*, 283 Conn. 644, 650, 931 A.2d 142 (2007). When construing a statute, [o]ur fundamental objective is to ascertain and give effect to the apparent intent of the legislature. . . . In other words, we seek to determine, in a reasoned manner, the meaning of the statutory language as applied to the facts of [the] case, including the question of whether the language actually does apply. . . . In seeking to determine that meaning, General Statutes § 1-2z[7] directs us first to consider the text of the statute

---

[7] General Statutes § 1-2z provides: "The meaning of a statute shall, in the first instance, be ascertained from the text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and

itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered. . . . When a statute is not plain and unambiguous, we also look for interpretive guidance to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and common law principles governing the same general subject matter . . . ." (Internal quotation marks omitted.) *C. R. Klewin Northeast, LLC* v. *Fleming*, 284 Conn. 250, 260–61, 932 A.2d 1053 (2007). A statute is ambiguous if its language, read in context, is susceptible of more than one plausible interpretation. *State* v. *Orr*, 291 Conn. 642, 654, 969 A.2d 750 (2009).

We agree with Cadle that the text of § 45a-175 (g), as applied to the facts of the present case, is plain and unambiguous. The only plausible meaning of § 45a-175 (g) is that the powers of a Probate Court, when adjudicating the matters referred to in subsection (a) of the statute, are coincidental with the powers of the Superior Court "at law and in equity pertaining to" those matters. As applied to the facts of the present case, its meaning is that the power of the Probate Court to order discovery in a proceeding on the interim account of executors is coincidental to the powers that a Superior Court judge would have in a plenary case involving a challenge to such an account.

The first clause of subsection (g), namely, "[i]n any action under this section," necessarily refers to the entire § 45a-175. Subsection (a) of § 45a-175 specifically confers jurisdiction of the Probate Court over "the

does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered."

interim and final accounts of . . . executors . . . ."
Furthermore, subsection (f) of § 45a-175 provides that,
in a proceeding on an account, "the [probate] court
shall determine the rights of the fiduciaries . . . ren-
dering the account and of the parties interested in the
account . . . ." Thus, the first clause of subsection (g),
read together with subsections (a) and (f), clearly and
unambiguously applies to Probate Court actions in adju-
dicating interim and final accounts of executors of
estates.

The remainder of subsection (g) of § 45a-175 makes
clear that, in performing such an adjudication, the Pro-
bate Court "shall have, in addition to powers pursuant
to this section, all the powers available to a judge of
the Superior Court at law and in equity pertaining to
matters under this section." Thus, this language makes
clear that, in adjudicating an executor's account, includ-
ing, of course, ruling on any objections to the account,
the Probate Court has all of the powers that a Superior
Court judge would have "at law and in equity"; General
Statutes § 45a-175 (g); in doing so. We know from
*Carten* itself, as well as from common sense, that the
approval of an account by the Probate Court applies
only to matters "apparent on the face of the account";
*Carten* v. *Carten*, supra, 153 Conn. 615; that "[p]roblems
of internal administration, proper corporate reserves
for working capital and replacement of wasting assets,
dividend policy, exercise of business judgment and
assumption of business risks may, in a proper case, be
the subject of the broad jurisdiction of a general court
of equity"; id.; such as the Superior Court, and that the
approval of the account would not "bar a beneficiary
from a subsequent action in the Superior Court to
recover damages for a breach of trust by a [fiduciary]";
id.; based on the conduct of the executors reflected in
such an account. Thus, subsection (g) makes clear that
a Probate Court, in ruling on an interim or final account

that is challenged by someone with standing—such as a beneficiary or, as in the present case, a creditor of the estate—has the same powers to order discovery as the Superior Court would have in a case in which that same person brought a plenary action in the Superior Court challenging the account based on the conduct of the fiduciaries. That is precisely what the Probate Court's discovery order was in the present case.

Section 1-2z directs us to consider, in determining whether a statute is plain and unambiguous, in addition to the text of the statute under consideration, "its relationship to other statutes. . . ." See footnote 7 of this opinion. Our consideration of such other statute confirms the plain meaning of § 45a-175 (g) garnered from its text. General Statutes § 52-148a (a) provides: "Any party in a civil action *or probate proceeding* may, after the commencement of such action or proceeding, take the testimony of any person by deposition." (Emphasis added.) This statutory linkage between the power to take a deposition in an ordinary civil action, which would be in the Superior Court, and in a probate proceeding, strongly supports the textual plain meaning of § 45a-175 (g) making the discovery powers of the Probate Court in account proceedings equivalent to those of the Superior Court in a civil action regarding such an account.

The executors agree that § 45a-175 (g) is plain and unambiguous. They contend, however, that its plain and unambiguous meaning is different from that urged by Cadle. Specifically, focusing on the first clause of subsection (g) of § 45a-175, namely, "[i]n any action under this section," they contend that the clause refers only to the four procedures specified in subsections (b), (c) (1), (e) and (f) of § 45a-175. Subsection (b) involves the application to the Probate Court by certain parties interested in an inter vivos trust for approval of an account of the trust; subsection (c) (1) involves the

application by a beneficiary of an inter vivos trust for an accounting by the trustee; subsection (e) involves the appointment by the Probate Court, sua sponte, of an auditor for an audit of any account over which the court has jurisdiction; and subsection (f) involves the determination of the rights of the parties upon the allowance of an account. The executors concede, moreover, that absent the first clause of subsection (g) of § 45a-175, namely, "[i]n any action under this section," the text of subsection (g) of § 45a-175 would give the Probate Court the same powers as the Superior Court with respect to an executor's account.

Although we concede that the contention of the executors offers *another* meaning for § 45a-175 (g), we do not agree that it offers another *plausible* meaning. First, it ignores the ordinary meaning of *any* action under this section, which points the reader, not to *some* of the actions taken by the Probate Court under the section but to *any* of them. It would certainly be an odd drafting convention to use the general, all inclusive phrase "any action" to refer to only certain of the potential actions that the court could take under the section. Second, we can conceive of no reason why the legislature would vest the full power of the Superior Court in the Probate Court with regard to only those four specified actions, to the exclusion of the accounting of fiduciaries under subsection (a), particularly when, even under the executors' interpretation, it would have such full power under subsection (f) of § 45a-175, which refers to "any account" over which the Probate Court has jurisdiction. In sum, although the executors have offered an alternative meaning for subsection (g), that meaning is not plausible and does not render its text ambiguous.

Having concluded that § 45a-175 (g) requires reversal of the trial court's judgments and reinstatement of the Probate Court's discovery order, that ordinarily would

end the discussion of this appeal. One final matter warrants comment, however.

Because of the conclusion that the text of § 45a-175 (g), and its relationship to other statutes, renders its meaning plain and unambiguous, § 1-2z prohibits us from examining the legislative history of that statutory language in determining its meaning. We are constrained to note, however, that consideration of that legislative history would, if thoughtfully considered in interpreting its meaning, strongly suggest a different meaning, namely, that any jurisdictional limitations on the power of the Probate Court in reviewing fiduciaries' accounts, which the court had recognized in *Carten*, remained undisturbed by the enactment of § 45a-175 (g).

What eventually became § 45a-175 (g) had its genesis in 1997 in what was termed Raised Bill No. 1275 in the Joint Committee on the Judiciary. In written testimony before the committee, the Probate Court Administrator, Judge F. Paul Kurmay, testified in favor of what was then section 4 of that raised bill.[8] Judge Kurmay stated: "This proposal amends . . . § 45a-175 to make it clear that the parties in an accounting before the probate court have the same remedies available to them as are available in the Superior Court. *This proposal does not increase the jurisdiction of the probate courts, but rather makes its powers more explicit.* The existing statutes are not explicit as to whether the courts of probate can provide the same remedies as the Superior Court in an account proceeding, although it is my opinion that our courts do enjoy those powers implicitly. Pursuant to . . . § 45a-175, the court clearly has jurisdiction over the accounts of testamentary trustees, certain inter vivos trustees, guardians, conservators and

---

[8] It appears that the Probate Court administrator was the nonlegislative sponsor of the bill.

executors and administrators." (Emphasis added.) Conn. Joint Standing Committee Hearings, Judiciary, 1997 Sess., Pt. 8, pp. 2636–37.[9] The rest of the legislative history was consistent with this testimony of Judge Kurmay.[10]

This legislative history, particularly the testimony of Judge Kurmay and the explanation of Representative John Wayne Fox, strongly suggests that, although the bill was clearly aimed at making explicit the *powers* of the probate courts in accounting proceedings so as to match those of the Superior Court, it was not intended to enlarge the *jurisdiction* of those courts.[11] This, in turn, would mean that, despite its clear language to the

---

[9] Judge Kurmay testified further as follows: "The issue becomes one of the powers of the court once an account has been filed with the court. If an accounting has been rendered in which there has been obvious wrongdoing, it should be made clear that the courts of probate may remove the fiduciary and surcharge and reduce fees when necessary in any proceeding under its jurisdiction. There are some who presently argue that the probate courts only have the authority to approve or disapprove the account, and may not order the trustee to take action to correct the account. Although I strongly disagree with that overly narrow interpretation of the law, rather than become involved in a lengthy appellate review of our powers, it is more expeditious to spell out what the legislature's intent is." Conn. Joint Standing Committee Hearings, supra, p. 2637.

[10] In the Senate, Senator Donald E. Williams, Jr., explained the bill as follows: "Further, the bill grants probate courts the powers available to superior courts in terms of law and equity in actions that the courts may take concerning financial accounts regarding certain fiduciaries and in that respect, it allows courts to remove or impose a surcharge on fiduciaries who fail to submit an accounting or act inappropriately with respect to the funds that are under the fiduciary's control.

"In addition, the probate court would be able to enjoin the fiduciary from engaging in certain conduct with respect to the funds under their care." 40 S. Proc., Pt. 5, 1997 Sess., pp. 1721–22.

In the House of Representatives, Representative John Wayne Fox briefly explained as follows: "It . . . grants powers in Superior Court judges to probate courts *acting within their jurisdiction.*" (Emphasis added.) 40 H.R. Proc, Pt. 9, 1997 Sess., p. 3230.

[11] Our courts have long recognized the doctrinal difference between the powers of a court to act pursuant to a statute and its jurisdiction. See *Amodio* v. *Amodio,* 247 Conn. 724, 728–29, 724 A.2d 1084 (1999).

contrary, it was not intended to overrule the jurisdictional limitations on the probate courts, insofar as discovery is concerned, identified by the Supreme Court in *Carten*, as we have explained previously. Put another way, because the Supreme Court in *Carten* clearly described the limitations on discovery of the probate courts in jurisdictional terms, the legislative history of § 45a-175 (g) strongly suggests that, despite the breadth of its text, it was not intended to enlarge any preexisting limitations on the jurisdiction of the probate courts, such as those recognized in *Carten*.

Thus, this could well have been that rare case in which the application of the plain meaning rule, as mandated by § 1-2z, conflicted with the purpose and meaning of the legislation, as evidenced by a consideration of its legislative history, and in which the operation of § 1-2z would have made a difference in the outcome of the case. Accordingly, this could well have been a case in which it would have been appropriate for the court to consider the question of whether § 1-2z is unconstitutional under the doctrine of the separation of powers. See, e.g., *Kinsey* v. *Pacific Employers Ins. Co.*, 277 Conn. 398, 414–19, 891 A.2d 959 (2006) (*Borden, J.*, concurring).

Having recognized this apparent conflict between the text of § 45a-175 (g) and its legislative history, and the potential questions that this conflict raised, after oral argument in this case we ordered the parties to file supplemental briefs on certain questions.[12] Despite this

---

[12] The specific questions were: "[1] Is [§] 45a-175 (g) plain and unambiguous within the meaning of . . . [§] 1-2z, as applied to the facts of this case, so as to bar consideration of its legislative history or any other extratextual material?; [2] If the answer to Question 1. is YES, does [§] 45a-175 (g) mandate reinstatement of the order of the Probate Court in this case?; [3] If the answers to Questions 1. and 2. are YES, does the legislative history of [§] 45a-175 (g), or any other extratextual material, nonetheless suggest or require a different interpretation of the statute?; [4] If the answer to Question 3. is YES, is . . . [§] 1-2z unconstitutional as a violation of the separation of powers between the legislative and judicial powers?"

direction, however, none of the parties addressed the question of the constitutionality of § 1-2z. Both sides considered § 45a-175 (g) as unambiguously favoring their interpretations of the statute, and both sides considered the legislative history to be consistent with those interpretations. They both, therefore, declined to address the question of constitutionality that we had directed them to address.

In light of this procedural posture of the appeal, we decline to do so as well. It would be imprudent of us to address such a question in the absence of any briefing of the question.

The judgments are reversed, and the cases are remanded to the trial court with direction to reinstate the discovery order issued by the Probate Court.

In this opinion DiPENTIMA, C. J., concurred.

ROBINSON, J., concurring. I agree that the judgment of the trial court should be reversed.