******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

WILLIAM P. GEREMIA ET AL. *v.* JOSEPH D.
GEREMIA ET AL.
(AC 36848)

Gruendel, Sheldon and West, Js.

*Argued April 8—officially released September 15, 2015*

(Appeal from Superior Court, judicial district of
Hartford, Schuman, J.)

*Daniel H. Kennedy III*, for the appellants (plaintiffs).

*Christopher Kylin*, for the appellees (defendants).

*Opinion*

GRUENDEL, J. The plaintiffs, William P. Geremia and Valerie M. Geremia, appeal from the judgment of the trial court granting the motion to dismiss filed by the defendants, Joseph D. Geremia, Niki Geremia, Douglas J. Geremia, Linda Geremia, and David A. Geremia.[1] The court concluded that it lacked subject matter jurisdiction over the various causes of action alleged in the plaintiffs' complaint due to the doctrine of primary jurisdiction. On appeal, the plaintiffs challenge the propriety of that determination. We affirm in part and reverse in part the judgment of the trial court.

The procedural posture of this case governs our recitation of the facts underlying the appeal. "A motion to dismiss tests, inter alia, whether, on the face of the record, the court is without jurisdiction." (Internal quotation marks omitted.) *Kawecki* v. *Saas*, 132 Conn. App. 644, 648, 33 A.3d 778 (2011). "[L]ack of subject matter jurisdiction may be found in any one of three instances: (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts. . . . When a trial court decides a jurisdictional question raised by a pretrial motion to dismiss on the basis of the complaint alone, it must consider the allegations of the complaint in their most favorable light. . . . In this regard, a court must take the facts to be those alleged in the complaint, including those facts necessarily implied from the allegations, construing them in a manner most favorable to the pleader. . . . In contrast, if the complaint is supplemented by undisputed facts established by affidavits submitted in support of the motion to dismiss . . . the trial court, in determining the jurisdictional issue, may consider these supplementary undisputed facts and need not conclusively presume the validity of the allegations of the complaint. . . . Rather, those allegations are tempered by the light shed on them by the [supplementary undisputed facts] . . . . If affidavits and/or other evidence submitted in support of a defendant's motion to dismiss conclusively establish that jurisdiction is lacking, and the plaintiff fails to undermine this conclusion with counteraffidavits . . . or other evidence, the trial court may dismiss the action without further proceedings."[2] (Citations omitted; emphasis omitted; internal quotation marks omitted.) *Conboy* v. *State*, 292 Conn. 642, 651–52, 974 A.2d 669 (2009).

The following facts and procedural history of this acrimonious intrafamily dispute are relevant to this appeal. On September 9, 2009, Margaret Geremia executed a power of attorney naming her two sons, William and Douglas, as her attorneys in fact. For more than ten years, William had assisted Margaret with her financial affairs and day-to-day needs. He continued to serve as her primary caretaker after the power of attorney

was executed.

On September 24, 2010, William underwent a major medical procedure that required hospitalization. While William was recovering from that procedure, Margaret suffered a series of mini-strokes, which impaired her ability to live alone in her North Haven home. As a result, Margaret moved into the home of Douglas and his wife, Linda, in Wallingford. She continued to reside at either that home or the home of her grandson, Joseph,[3] and his wife, Niki, until her death in December, 2012.

On October 23, 2010, Linda assumed control of Margaret's financial affairs at the behest of Douglas, who suffers from dyslexia and is illiterate. Linda exercised control of Margaret's checkbook, from which she wrote checks, made withdrawals and handled all banking transactions on behalf of Margaret. Beginning on March 1, 2011, the plaintiffs allege, the defendants acted knowingly and wrongfully to financially benefit themselves at the expense of Margaret and her estate, while conspiring to unduly influence her into believing that the plaintiffs were appropriating her assets for their own personal use. On March 15, 2011, Joseph and Niki unsuccessfully attempted to have Margaret's power of attorney revoked. On that date, Margaret was brought to multiple banks, where the vast bulk of her liquid assets were withdrawn and deposited into accounts belonging to Douglas and Linda. Soon thereafter, Douglas took Margaret to meet with Attorney Andrew Knott, where she then revoked her existing power of attorney. At that time, Margaret was in her nineties and suffered from dementia and a diminished capacity.

In response, William filed an application with the Probate Court seeking an involuntary conservatorship for Margaret. Following multiple hearings, the court in September, 2011, decreed that Margaret was not competent to handle her own financial affairs. Aided by her legal counsel, Margaret agreed to the appointment of a conservator on her behalf. The court thus appointed Attorney Johanna P. Fazzone as conservator of Margaret's person and estate. Fazzone soon resigned from that role prior to taking control of any of Margaret's assets. In so doing, Fazzone advised the court that the parties were making demands well beyond what was represented to her by those parties prior to her appointment. The court accepted Fazzone's resignation and appointed Attorney Peter Boorman as a successor conservator.

Upon taking control of Margaret's assets, Boorman noted four separate transactions in which a total of $15,000 had been withdrawn from her account after the appointment of a conservator. When Boorman demanded that Douglas and Linda return those funds, they refused. Boorman thereafter petitioned the court for permission to report the withdrawals to criminal

authorities for further investigation. At a May 22, 2012 hearing on that petition, Douglas and Linda admitted that they had assisted Margaret in making the aforementioned withdrawals. They further apprised the court that Margaret presently had $8928 stored in a bureau drawer at their home. In response, the court suggested that the parties "drive down right now" to secure those funds. As the defendants' attorney later stated, "everyone agreed the money was going to go to the conservator" when the May 22, 2012 hearing concluded.

When Boorman attempted to retrieve the funds that day in accordance with the court's directive, he was physically assaulted by Joseph, and police were called to the home.[4] By order dated June 21, 2012, the court accepted Boorman's resignation as conservator of Margaret's person and estate. Attorney Katrina Camera later was appointed as a successor conservator.

Months earlier, the plaintiffs' counsel had sent a letter to the Probate Court, indicating that he "will be asking the court to issue orders in regards to the items listed below: [a] [t]he conversion and/or theft of monies from [Margaret] to various family members in the approximate amount of $29,000. [b] [t]he removal of many items of personal property belonging to [Margaret] by family members from [Margaret's] real property without permission from this court and/or the conservator. [c] [t]he removal of items of personal property from [Margaret's] real property which items belong to [William and Valerie]. [d] [t]he sale of [Margaret's] real estate. [e] [t]he need to remove [Margaret's] checkbook from the control and possession of [Linda]. [f] [Margaret's] life insurance policies and the disposition of the cash value removed from any life policy. [g] [w]hether or not credit cards have been opened in [Margaret's] name with the assistance of any [family members and;] [h] [t]he establishment of a set meeting date and time for [William] to visit with his mother, [Margaret], outside the presence of any other family members."

Appended to the operative complaint is the Probate Court's September 27, 2012 ruling thereon.[5] In that written decision, the court expressly rejected the plaintiffs' challenge to certain financial transactions that transpired prior to the appointment of the conservator. As it stated: "The court breaks down the claim of [the plaintiffs] to two time frames, one for transactions occurring prior to the finding that a conservator was to be appointed for Margaret, and one for transactions occurring after the finding that a conservator was to be appointed . . . . The court approaches the application from this standpoint, as it believes the differing circumstances require separate showings by a party seeking to attack the transactions. Prior to the court accepting the stipulation of the parties that a conservator should be appointed for Margaret . . . Margaret had every right to spend her money as she saw fit, and

the court would require the party seeking to establish probable cause to attack any transactions in this time frame to prove at a heightened burden that the transaction was accomplished using undue influence upon Margaret or otherwise not the free act of [her]. The court believes this claim is akin to a claim of undue influence in a will contest. The proponent needs to proffer evidence tending to show that the free will and independence of Margaret was overcome by the control of someone such that Margaret was constrained to do what was against her will, unable to refuse and too weak to resist." The court concluded that the plaintiffs had not satisfied that burden. Because Margaret "had the right to expend her funds as she saw fit prior to being conserved," the court rejected the plaintiffs' challenge to those transactions that transpired prior to the September, 2011 appointment of a conservator.

Turning its attention to subsequent transactions, the court noted that "by decree dated June 19, 2012, the court found that Douglas and Linda had knowingly and wrongfully assisted [Margaret] in withdrawing $22,000 from her account during a time period *after* the date they both knew that a conservator had been appointed for her." (Emphasis in original.) After reviewing various allegations of impropriety underlying the plaintiffs' conversion and theft claims, the court ultimately found that "additional withdrawals totaling $2500 should also be found to be wrongful, reduced by a credit of $500 for [Margaret's] reasonable gifts, for a total claim of Margaret's estate against Douglas and Linda in the amount of $24,000." The court noted that the conservator previously had recovered the $8928 from the bureau drawer and "an additional $7000 . . . from David Geremia, son of Douglas and Linda, who was the recipient of funds removed from [Margaret's] account in this amount."

The court also ruled that Douglas and Linda were "entitled to reasonable compensation for housing Margaret for the time period commencing" with the month in which the court appointed a conservator therefor. The court found that $400 per month "is reasonable as it comports with both the belief of the conservator and the testimony of Douglas. As this compensation should commence during the month of September, 2011, thirteen months have passed since that time, resulting in a total claim of $5200, which claim may be offset against the claim of Margaret's estate in the amount of $8072, leaving a net claim in favor of Margaret's estate in the amount of $2872." The court denied William's petition "for the return of personal property belonging to William and/or Valerie . . . as being beyond the jurisdiction of this court." The court then denied William's petition "for the return of personal property belonging to Margaret . . . without prejudice to the right of the conservator to file such a petition if she believes such a petition is warranted." The plaintiffs did not appeal from that decision to the Superior Court.[6]

Margaret died on December 6, 2012.[7] The plaintiffs commenced this civil action in the Superior Court one month later. The operative complaint contains twelve counts. Counts one and two allege that Douglas and Linda, respectively, breached a fiduciary duty to Margaret in handling her funds and assets. Count three alleges that the defendants tortiously interfered with William's reasonable expectation of an inheritance. Count four alleges conversion on the part of the defendants with respect to (1) certain funds and personal property of Margaret, and (2) certain personal property belonging to the plaintiffs. Count five similarly alleges statutory theft on the part of the defendants with respect to (1) certain funds and personal property of Margaret, and (2) certain personal property belonging to the plaintiffs. Count six alleges slander per se against Douglas, count seven alleges libel per se against Joseph, and count eight alleges slander per se against Niki. Counts nine, ten and eleven allege intentional infliction of emotional distress by Douglas, Joseph, and Niki, respectively. In their twelfth and final count, the plaintiffs advance a claim of unjust enrichment against all defendants.

The first responsive pleading filed by the defendants was a motion to dismiss alleging both improper venue and forum non conveniens. The trial court denied that motion. The defendants then proceeded to file six successive motions to strike, all of which were denied. The plaintiffs filed an amended complaint on October 16, 2013, and the defendants thereafter were defaulted for failure to plead. The defendants later moved to set aside that default, which the court denied without prejudice. In its order, the court advised the defendants that "[s]aid default can be set aside by the filing" of an answer to the plaintiffs' complaint, consistent with the strictures of Practice Book § 17-32 (b). The defendants ultimately filed their answer,[8] at which time the plaintiffs withdrew their pending motion for a judgment of default.

On December 13, 2013, the defendants filed a motion to dismiss the plaintiffs' action "[p]ursuant to [General] Statutes § 54-345 (3) and . . . Practice Book §§ 10-30 and 10-31"[9] because the "[p]laintiffs in this case have brought an action where the jurisdiction is properly before the Probate Court of Connecticut, and which is already before that court. Further, that court has already ruled on several matters which have already been brought before it, and the [p]laintiffs are estopped from pursuing a second hearing of these matters under the doctrine of collateral estoppel . . . and also by res judicata . . . ."[10] (Emphasis omitted.) The plaintiffs filed an opposition to that motion.

By memorandum of decision dated April 2, 2014, the trial court concluded that it lacked subject matter jurisdiction over the plaintiffs' action due to the doctrine of primary jurisdiction. The court reasoned that "[t]he gravamen of the present suit is the proper distribution

of the assets of [Margaret] between her sons and their families. It thus goes to the heart of the matter currently in Probate Court. Allowing this suit to continue would interfere with the orderly process of administrative adjudication and judicial review in which a reviewing court will have the benefit of the agency's findings and conclusions. . . . Thus, the plaintiffs should litigate this matter in Probate Court, if they have not already done so, and, if dissatisfied, file an appeal to the Superior Court." (Citation omitted; internal quotation marks omitted.)

The plaintiffs subsequently filed a motion seeking reargument. Appended as an exhibit to that motion was the Probate Court's January 30, 2014 decree, which states in relevant part: "On December 20, 2013, Douglas and [Linda] . . . filed a petition with this court seeking an order directing the administratrix to return personal possessions to the family of [Margaret]. An objection was filed by [the plaintiffs]. Prior to taking testimony, the administratrix . . . described a process she had utilized in an unsuccessful attempt to determine claims to ownership of items which were in storage from [Margaret's] home. It was further disclosed that a civil action has been pending in the Superior Court at Hartford in which ownership of certain disputed personal property, including the assets held by the administratrix, was being contested. And it is ordered and decreed that . . . because there is a prior pending matter concerning the same issue of ownership of items which are either under the control of the administratrix or allegedly should be under her control, the court declines to act in the manner requested. Should the Superior Court enter an order determining which items belong to the estate, this court may then consider acting to order distribution of the estate's assets." The plaintiffs thus emphasized in their motion to reargue that the Probate Court "is deferring to the Superior Court" with regard to the property contested in the present action. (Emphasis omitted.) The court denied that motion, and this appeal followed.

I

At the outset, we note what is not in dispute. In their appellate brief, the plaintiffs aver that Joseph and Niki "filed a chapter 13 bankruptcy petition in 2013 . . . . On October 23, 2013, [they] received a discharge under § 727 of title 11 of the Bankruptcy Code." For that reason, the plaintiffs apprised this court that they "make no claims on appeal" against Joseph and Niki. Accordingly, we do not consider the propriety of the court's dismissal of counts seven, eight, ten and eleven of the operative complaint, which counts named either Joseph or Niki exclusively as the defendant.

II

In dismissing the plaintiffs' action, the court con-

cluded that it lacked subject matter jurisdiction due to the primary jurisdiction doctrine. On appeal, the plaintiffs maintain that, because their complaint alleged various torts over which the Probate Court does not possess exclusive jurisdiction, that determination was improper. Our review of the plaintiffs' claim is plenary. See *Heussner* v. *Hayes*, 289 Conn. 795, 802, 961 A.2d 365 (2008).

A

We first address the argument advanced by the defendants that the court granted their motion to dismiss "as a matter of judicial economy." The defendants appear to misunderstand the concept of primary jurisdiction in the context of Probate Court matters.

Generally speaking, the primary jurisdiction doctrine arises in the context of administrative proceedings. As our Supreme Court has explained, "the primary jurisdiction doctrine . . . is triggered *when courts and administrative agencies have concurrent subject matter jurisdiction*[11] over a case. . . . Intended to promote proper relationships *between the courts and administrative agencies* charged with particular regulatory duties, the primary jurisdiction doctrine applies where a claim is originally cognizable in the courts, and comes into play whenever enforcement of the claim requires the resolution of issues which, *under a regulatory scheme, have been placed within the special competence of an administrative body*; in such a case the judicial process is suspended pending referral of such issues to the administrative body for its views. . . . [T]he rationale underlying primary jurisdiction is in substance much the same as that which supports exhaustion. . . . The doctrine of primary jurisdiction, like exhaustion, is grounded in a policy of fostering an orderly process of administrative adjudication and judicial review in which a reviewing court will have the benefit of the agency's findings and conclusions." (Citation omitted; emphasis added; footnote added; internal quotation marks omitted.) *Financial Consulting, LLC* v. *Commissioner of Insurance*, 315 Conn. 196, 222–23 n.23, 105 A.3d 210 (2014); see also *Mazzola* v. *Southern New England Telephone Co*., 169 Conn. 344, 348, 363 A.2d 170 (1975) ("[t]he doctrine of primary jurisdiction is a rule of judicial administration created by court decision in order to promote proper relationships between the courts and administrative agencies charged with particular regulatory duties" [internal quotation marks omitted]). We know of no authority, nor have the defendants furnished any, in which our appellate courts have applied that doctrine to Probate Court proceedings.

Rather, the term "primary jurisdiction" possesses a distinct meaning in the context of Probate Court proceedings. Connecticut law long has demarcated the distinction between the jurisdiction of our probate and

superior courts. General Statutes § 51-164s provides in relevant part that "[t]he Superior Court shall be the sole court of original jurisdiction for all causes of action, except such actions over which the courts of probate have original jurisdiction, as provided by statute. . . ." Almost two centuries ago, our Supreme Court recognized that the General Statutes vest "in the court of probate, the whole power of settling estates . . . ." *Beach* v. *Norton*, 9 Conn. 182, 196 (1832). Since that time, our courts have adhered to the "undoubted proposition" that "[t]he Superior Court cannot exercise a primary jurisdiction which by the statute is reposed in the Courts of Probate." (Internal quotation marks omitted.) *Hall* v. *Dichello Distributors, Inc.*, 6 Conn. App. 530, 534–35, 506 A.2d 1054, cert. denied, 200 Conn. 807, 512 A.2d 230 (1986). Thus, unlike the primary jurisdiction doctrine that arises in the administrative context, the concept of primary jurisdiction in the probate context is not a judicially crafted tool of adjudicative preference applicable to situations in which an administrative agency and the Superior Court possess concurrent jurisdiction. In the probate context, primary jurisdiction instead involves a statutory question as to whether jurisdiction over the subject matter rests exclusively with the Probate Court.

"The Probate Court is a court of limited jurisdiction prescribed by statute, and it may exercise only such powers as are necessary to the performance of its duties. . . . As a court of limited jurisdiction, it may act only when the facts and circumstances exist upon which the legislature has conditioned its exercise of power. . . . Such a court is without jurisdiction to act unless it does so under the precise circumstances and in the manner particularly prescribed by the enabling legislation." (Citations omitted; internal quotation marks omitted.) *Heussner* v. *Hayes*, supra, 289 Conn. 802–803; see also *Palmer* v. *Hartford National Bank & Trust Co.*, 160 Conn. 415, 428, 279 A.2d 726 (1971) ("[t]he court of probate has no common-law jurisdiction"); *Potter* v. *Alcorn*, 140 Conn. 96, 100, 99 A.2d 97 (1953) ("[i]t is, of course, elementary that courts of probate are strictly statutory tribunals"); *Slocum* v. *Wheeler*, 1 Conn. 429, 438–39 (1816) ("[i]n all cases of courts of limited jurisdiction, their proceedings must be in matters within their jurisdiction, or they are void"). By contrast, " '[t]he Superior Court of this state as a court of law is a court of general jurisdiction. It has jurisdiction of all matters expressly committed to it and of all others cognizable by any law court of which the exclusive jurisdiction is not given to some other court. The fact that no other court has exclusive jurisdiction in any matter is sufficient to give the Superior Court jurisdiction over that matter.' *State ex rel. Morris* v. *Bulkeley*, 61 Conn. 287, 374, 23 A. 186 [1892]." *LaBella* v. *LaBella*, 134 Conn. 312, 316, 57 A.2d 627 (1948); accord *In re Joshua S.*, 260 Conn. 182, 215, 796 A.2d 1141 (2002) (holding that

"in the absence of legislation bestowing upon the Probate Courts exclusive jurisdiction over the appointment of a statutory parent, jurisdiction over the appointment of a statutory parent necessarily was conferred upon the Superior Court").[12] It therefore is incumbent on a party moving to dismiss a complaint on primary jurisdiction grounds to demonstrate that the causes of action contained therein are matters entrusted exclusively to the Probate Court.

B

In moving to dismiss the plaintiffs' action for lack of subject matter jurisdiction, the defendants did not identify any statutory basis indicating that the Probate Court was vested with primary jurisdiction over the substance of the plaintiffs' complaint. In granting that motion, the Superior Court cited to General Statutes § 45a-98 in support of the general proposition that the Probate Court "has exclusive subject matter jurisdiction over matters involving the validity of wills and the settlement of estates . . . ." (Internal quotation marks omitted.) We therefore focus our attention on that statute in considering the plaintiffs' claim, mindful that "[o]ur legislature has consistently drafted legislation to state expressly when a court has exclusive jurisdiction." (Internal quotation marks omitted.) *In re Joshua S.*, supra, 260 Conn. 214.

Section 45a-98 (a) provides: "Courts of probate in their respective districts shall have the power to (1) grant administration of intestate estates of persons who have died domiciled in their districts and of intestate estates of persons not domiciled in this state which may be granted as provided by section 45a-303; (2) admit wills to probate of persons who have died domiciled in their districts or of nondomiciliaries whose wills may be proved in their districts as provided in section 45a-287; (3) except as provided in section 45a-98a or as limited by an applicable statute of limitations, determine title or rights of possession and use in and to any real, tangible or intangible property that constitutes, or may constitute, all or part of any trust, any decedent's estate, or any estate under control of a guardian or conservator, which trust or estate is otherwise subject to the jurisdiction of the Probate Court, including the rights and obligations of any beneficiary of the trust or estate and including the rights and obligations of any joint tenant with respect to survivorship property; (4) except as provided in section 45a-98a, construe the meaning and effect of any will or trust agreement if a construction is required in connection with the administration or distribution of a trust or estate otherwise subject to the jurisdiction of the Probate Court, or, with respect to an inter vivos trust, if that trust is or could be subject to jurisdiction of the court for an accounting pursuant to section 45a-175, provided such an accounting need not be required; (5)

except as provided in section 45a-98a, apply the doctrine of cy pres or approximation; (6) to the extent provided for in section 45a-175, call executors, administrators, trustees, guardians, conservators, persons appointed to sell the land of minors, and attorneys-in-fact acting under powers of attorney created in accordance with section 45a-562, to account concerning the estates entrusted to their charge; and (7) make any lawful orders or decrees to carry into effect the power and jurisdiction conferred upon them by the laws of this state.''

Distilled to its essence, the plaintiffs' claim is that the legislature has not entrusted the actions alleged in their complaint to the exclusive jurisdiction of the Probate Court. We agree.

i

We first tackle the proverbial low-hanging fruit. Counts three, six and nine allege tortious interference with the expectation of an inheritance, slander per se, and intentional infliction of emotional distress.[13] Neither § 45a-98 nor any other provision of the General Statutes vests the Probate Court with jurisdiction, exclusive or otherwise, over those actions sounding in tort. For that reason, the court improperly dismissed those counts.

ii

We also do not agree that the plaintiffs' claims alleging conversion and statutory theft of certain funds and personal property of Margaret are the exclusive domain of the Probate Court because they pertain to the property of her estate, as the defendants argued in their memorandum of law in support of their motion to dismiss. It is true that § 45a-98 (a) plainly confers on the Probate Court "the power to . . . (3) determine title or rights of possession and use in and to any real, tangible or intangible property that constitutes, or may constitute, all or part of any trust, any decedent's estate, or any estate under control of a guardian or conservator, which trust or estate is otherwise subject to the jurisdiction of the Probate Court, including the rights and obligations of any beneficiary of the trust or estate and including the rights and obligations of any joint tenant with respect to survivorship property . . . ." Nevertheless, the exercise of that power is not entrusted solely with the Probate Court. Section 45a-98 (b) expressly provides in relevant part that "[t]he jurisdiction of courts of probate to determine title or rights or to construe instruments . . . pursuant to subsection (a) of this section is concurrent with the jurisdiction of the Superior Court and does not affect the power of the Superior Court as a court of general jurisdiction." As this court has observed, § 45a-98 (b) "is a declaration that the Probate Court and the Superior Court are to have concurrent jurisdiction over matters involving title

and rights to property."[14] *Gallant* v. *Cavallaro*, 50 Conn. App. 132, 135–36, 717 A.2d 283, cert. denied, 247 Conn. 936, 722 A.2d 1216 (1998), cert. denied, 528 U.S. 1005, 120 S. Ct. 500, 145 L. Ed. 2d 386 (1999). Accordingly, while the Probate Court possesses jurisdiction to determine title or rights of possession and use regarding "any real, tangible or intangible property that constitutes, or may constitute" part of Margaret's estate, that jurisdiction is not exclusive.[15]

It bears emphasis that, as a court of limited jurisdiction, the Probate Court "is without jurisdiction to act unless it does so under the precise circumstances and in the manner particularly prescribed by the enabling legislation." (Internal quotation marks omitted.) *Heussner* v. *Hayes*, supra, 289 Conn. 803. The plain language of the enabling legislation at issue, § 45a-98 (a) (3), affords the Probate Court jurisdiction to "*determine* title or rights of possession and use in and to any real, tangible or intangible property . . . ." (Emphasis added.) See also *Bender* v. *Bender*, 292 Conn. 696, 716, 975 A.2d 636 (2009) (§ 45a-98 [a] [3] vests "the Probate Court with concurrent jurisdiction with the Superior Court to *try* title to real and personal property in which a claim is made that said property is an asset of a trust, a decedent's estate, or any estate under the control of a conservator" [emphasis added]). Neither § 45a-98 (a) (3) nor any other statute confers jurisdiction on the Probate Court to adjudicate disputes regarding the collection of such property. Rather, "suits . . . to collect assets or enforce contract rights of the decedent are not brought in the Probate Court but in the Superior Court . . . . Historically, only the Superior Court had jurisdiction to *direct* the transfer to the beneficial owner of assets standing in the name of the deceased . . . . [A] suit by an heir to set aside a fraudulent sale made by the administrator, may properly be brought in the Superior Court. In [that] case, the Probate Court might afford some relief by requiring an accounting from the administrator, but could not furnish as complete relief as a court of equity might provide by restoring the status quo." (Emphasis in original; footnotes omitted.) R. Folsom & G. Wilhelm, Probate Jurisdiction and Procedure in Connecticut (2d Ed. 2014) § 2:23, pp. 2-67 and 2-68, and cases cited therein. As this state's highest court observed many years ago: "But it is urged, that the question made in the superior court respecting the right to a transfer of [certain property], should have been made before the court of probate. On what ground can this be urged? Can a court of probate order a transfer of property, by the heir or the administrator? Could it order a transfer of [the property]? If so, how could it enforce the order? No such power is possessed by a court of probate; nor is it believed, that it has ever been exercised." *Cowles* v. *Whitman*, 10 Conn. 120, 125 (1834). The defendants have offered no authority to the contrary.

Also relevant to the issue before us is the scope of relief sought by the plaintiffs in the present case. With respect to the conversion claims, they requested monetary damages, statutory interest, punitive damages, costs, and a decree that "all of [Margaret's] personal property and monies misappropriated by the defendants be held in constructive trust for the benefit of [her estate]."[16] With respect to their statutory theft claims, the plaintiffs sought identical relief, save for the additional request of treble damages pursuant to General Statutes § 52-564. Proper recourse for a party seeking such relief is to the Superior Court. As our Supreme Court observed in *Ramsdell* v. *Union Trust Co.*, 202 Conn. 57, 73, 519 A.2d 1185 (1987), after noting the limited jurisdiction of the Probate Court, "claims for money damages and equitable relief against the defendant should be brought in a court of general, rather than limited, jurisdiction." Indeed, "[a] court of probate is unable to award damages. . . . It would, therefore, be inappropriate to allow a court to entertain an action in which it is without the power to grant the relief requested." (Citation omitted.) *Palmer* v. *Hartford National Bank & Trust Co.*, supra, 160 Conn. 430. In light of the foregoing, we conclude that the trial court improperly determined that the Probate Court possessed jurisdiction over the plaintiffs' conversion and statutory theft claims regarding property allegedly belonging to Margaret.

### iii

In addition, we note that the Probate Court, in its September 27, 2012 decision, denied the plaintiffs' petition "for the return of personal property belonging to [the plaintiffs] as being beyond the jurisdiction of this court." No appeal was taken from that decision, and the defendants in this appeal do not dispute the propriety of that determination. We further are aware of no statutory authority under which a Probate Court is empowered to entertain such claims. The Superior Court, therefore, improperly dismissed the claims pertaining to the alleged misappropriation of certain items of personal property belonging to the plaintiffs.

### iv

We next consider the first two counts of the plaintiffs' complaint, which allege breach of fiduciary duty on the part of Douglas and Linda, respectively. More specifically, those counts allege in relevant part that Douglas and Linda "[w]hile acting in a fiduciary capacity . . . failed to act with the utmost good faith, fair dealing, and loyalty with respect to [Margaret's] funds and assets and [thus] breached said fiduciary duty . . . ." In their prayer for relief, the plaintiffs sought, as to both counts one and two of their complaint, monetary damages, statutory interest, "common-law punitive damages," costs, and a decree that "all property misappropriated

by the defendant[s] be held in constructive trust for the benefit of [her estate]."

Although the General Statutes vest jurisdiction in the Probate Court "to the extent provided for in section 45a-175, [to] call executors, administrators, trustees, guardians, conservators, persons appointed to sell the land of minors, and attorneys-in-fact acting under powers of attorney created in accordance with section 45a-562, to account concerning the estates entrusted to their charge"; General Statutes § 45a-98 (a) (6); the jurisdiction of the Probate Court to order an accounting by those specified fiduciaries pursuant to General Statutes §§ 45a-98 (a) (6) and 45a-175 is not exclusive. "[W]hile the language of [§] 45a-175 clearly bestows jurisdiction upon [P]robate [C]ourts to handle accounts . . . nothing in the language of this section evidences any intention to abrogate the jurisdiction of the [S]uperior [C]ourt over actions of accounting. . . . Therefore, it is clear that [t]he Probate Courts and the Superior Courts exercise concurrent jurisdiction over accountings by persons acting under powers of attorney." (Citation omitted; internal quotation marks omitted.) *In the Matter of Bachand*, 306 Conn. 37, 59–60 n.9, 49 A.3d 166 (2012); accord *Dettenborn* v. *Hartford-National Bank & Trust Co.*, 121 Conn. 388, 391–92, 185 A. 82 (1936) ("[t]he jurisdiction of Courts of Probate to pass upon the accounts of a testamentary trustee is not, however, exclusive, and courts of general jurisdiction may entertain actions against trustees for breaches of their duty, the jurisdiction of the two courts being concurrent").

In addition, the Supreme Court has observed that "the allowance by a probate court of the account of a testamentary trustee does not constitute an adjudication of any matter not apparent on the face of the account nor bar a beneficiary from a subsequent action in the Superior Court to recover damages for a breach of trust by a trustee." *Carten* v. *Carten*, 153 Conn. 603, 615, 219 A.2d 711 (1966); see also *In re Probate Appeal of Cadle Co.*, 129 Conn. App. 814, 827, 21 A.3d 572, cert. denied, 302 Conn. 914, 27 A.3d 373 (2011). We perceive little reason why that logic should not apply equally in the present case. To the extent that Douglas and Linda provided something resembling an accounting to the Probate Court regarding their financial transactions involving Margaret's funds and assets, nothing in the General Statutes or our decisional law precludes an action in the Superior Court to recover damages arising from the alleged breach of fiduciary duty with respect thereto.

Perhaps more significant is the fact that counts one and two of the plaintiffs' complaint do not seek an accounting from Douglas and Linda. Rather, the plaintiffs seek the imposition of monetary damages and equitable relief due not only to their financial dealings with

respect to Margaret's "funds and assets" but also their exercise of undue influence over her. Because the plaintiffs' claims of breach of fiduciary duty go well beyond merely requesting an accounting and seek equitable and monetary relief, including, inter alia, punitive damages, those common-law claims "must be brought in a court of general jurisdiction" because "[t]he Probate Court [does] not have jurisdiction to adjudicate or award damages" therefor. *Gaynor* v. *Payne*, 261 Conn. 585, 599, 804 A.2d 170 (2002); see also *Ramsdell* v. *Union Trust Co.*, supra, 202 Conn. 73 ("claims for money damages and equitable relief against the defendant should be brought in a court of general, rather than limited, jurisdiction"); *Palmer* v. *Hartford National Bank & Trust Co.*, supra, 160 Conn. 430 (inappropriate to allow Probate Court "to entertain an action in which it is without the power to grant the relief requested"). The trial court, therefore, improperly determined that the Probate Court possessed exclusive jurisdiction over the breach of fiduciary duty counts of the plaintiffs' complaint.

v

We likewise conclude that the defendants have not established, as they must, that the legislature has vested the Probate Court with jurisdiction over the plaintiffs' unjust enrichment claim. That "common-law" doctrine provides "restitution, or the payment of money, when justice so requires." (Internal quotation marks omitted.) *300 State, LLC* v. *Hanafin*, 140 Conn. App. 327, 328 n.1, 59 A.3d 287 (2013). Our probate courts have no common-law jurisdiction; *Palmer* v. *Hartford National Bank & Trust Co.*, supra, 160 Conn. 428; and the defendants have not provided any authority indicating that the Probate Court may entertain such claims. Contra R. Folsom & G. Wilhelm, supra, § 2:45, p. 2-117 ("Probate Courts may not . . . enforce restitution or the restoration of property inequitably retained"); see also *Palmer* v. *Hartford National Bank & Trust Co.*, supra, 428 ("[t]he fact that the right [to recover certain expenses] is not found within the statute, but rather, in general equitable doctrines, tends to substantiate the . . . claim that the Probate Court . . . cannot order the payment of such expenses"). Furthermore, as with the breach of fiduciary duty, conversion and statutory theft counts, the operative complaint sought both monetary damages and equitable relief in the form of a constructive trust as recourse for the alleged unjust enrichment. Such requests for relief more properly belong before a court of general, rather than limited, jurisdiction. *Gaynor* v. *Payne*, supra, 261 Conn. 599; *Ramsdell* v. *Union Trust Co.*, supra, 202 Conn. 73.

It nevertheless remains that, given the procedural posture of this case, the critical inquiry is not whether the Probate Courts possess jurisdiction over a given matter, but whether the legislature has entrusted the Probate Courts with exclusive jurisdiction over the mat-

ter. In considering the jurisdiction of our courts of probate, Connecticut's appellate courts have emphasized that the legislature "has consistently drafted legislation to state expressly when a court has exclusive jurisdiction." (Internal quotation marks omitted.) *In re Joshua S.*, supra, 260 Conn. 214; *Sender* v. *Sender*, 56 Conn. App. 492, 498, 743 A.2d 1149 (2000). The defendants have not identified any statutory grant of jurisdiction, exclusive or otherwise, over the plaintiffs' allegation of unjust enrichment. Indeed, our decisional law is replete with instances in which the Superior Court has exercised jurisdiction over such claims. See, e.g., *Garrigus* v. *Viarengo*, 112 Conn. App. 655, 674, 963 A.2d 1065 (2009) (claim that executor of estate was unjustly enriched by "her wrongful acts by failing to justly compensate [the] estate or its heirs").

### vi

We therefore conclude that the defendants have not met their burden in demonstrating that the legislature has bestowed upon the Probate Court exclusive jurisdiction over the plaintiffs' breach of fiduciary duty, tortious interference with the expectation of an inheritance, conversion, statutory theft, slander per se, intentional infliction of emotional distress, and unjust enrichment claims, as set forth in the operative complaint. Accordingly, their dismissal on primary jurisdiction grounds was improper.

### III

That determination does not end our inquiry. As this court has observed, "[w]e have long held that this court may affirm a trial court's proper decision, although it may have been founded on a wrong reason." *State* v. *Aaron L.*, 79 Conn. App. 397, 416, 830 A.2d 776 (2003), aff'd, 272 Conn. 798, 865 A.2d 1135 (2005); accord *Flagg Energy Development Corp.* v. *General Motors Corp.*, 244 Conn. 126, 151, 709 A.2d 1075 (1998) (appellate court not required to reverse trial court ruling that reached correct result but for wrong reason). A court confronted with a motion to dismiss for lack of subject matter jurisdiction is obligated to scrutinize the complaint to determine whether such jurisdiction is lacking. *Federal Deposit Ins. Corp.* v. *Peabody, N.E., Inc.*, 239 Conn. 93, 99, 680 A.2d 1321 (1996); see also *Stauton* v. *Planning & Zoning Commission*, 271 Conn. 152, 157, 856 A.2d 400 (2004) (possible absence of subject matter jurisdiction must be addressed and decided whenever raised). Our review of the operative complaint reveals that the plaintiffs lack standing to pursue certain claims contained therein.[17]

"[S]tanding is the legal right to set judicial machinery in motion. One cannot rightfully invoke the jurisdiction of the court unless he [or she] has, in an individual or representative capacity, some real interest in the cause of action, or a legal or equitable right, title or interest

in the subject matter of the controversy. . . . Nevertheless, [s]tanding is not a technical rule intended to keep aggrieved parties out of court; nor is it a test of substantive rights. Rather it is a practical concept designed to ensure that courts and parties are not vexed by suits brought to vindicate nonjusticiable interests and that judicial decisions which may affect the rights of others are forged in hot controversy, with each view fairly and vigorously represented. . . . These two objectives are ordinarily held to have been met when a complainant makes a colorable claim of direct injury he has suffered or is likely to suffer, in an individual or representative capacity. Such a personal stake in the outcome of the controversy . . . provides the requisite assurance of concrete adverseness and diligent advocacy. . . . Standing [however] requires no more than a colorable claim of injury . . . ." (Citations omitted; internal quotation marks omitted.) *Kortner* v. *Martise*, 312 Conn. 1, 10, 91 A.3d 412 (2014); see also *Broadnax* v. *New Haven*, 270 Conn. 133, 156, 851 A.2d 1113 (2004) ("only those individuals who have suffered a direct injury would have standing" [emphasis omitted]).

The causes of action contained in the operative complaint fall into two classes—those alleging direct injury to the plaintiffs as a result of the defendants' conduct, and those alleging that the defendants' conduct adversely impacted Margaret's estate, to the detriment of the plaintiffs as its beneficiaries. We address each in turn.

### A

Counts three, six and nine allege tortious interference with the expectation of an inheritance, slander per se, and intentional infliction of emotional distress. Those counts plainly allege that the plaintiffs suffered direct injuries as a result of the conduct of the defendants. Likewise, those portions of counts four and five that pertain to the defendants' appropriation of personal property belonging to the plaintiffs similarly contain the requisite allegations of direct injury to them. Because those allegations amount to a colorable claim of direct injury, we conclude that the plaintiffs possess standing to maintain those causes of action.

### B

We reach a different result with respect to those causes of action alleging harm to Margaret's estate. Those causes of action pertain exclusively to personal property allegedly belonging thereto; the complaint contains no allegation regarding any real property. Under Connecticut law, "legal title to personal property passes to the executor or administrator, and such property is to be used for the payment of debts and the remainder distributed to the heirs" under a will. (Internal quotation marks omitted.) *Dinan* v. *Patten*, 317 Conn. 185, 208, 116 A.3d 275 (2015). As our Supreme

Court has observed, "[t]he rule of law is well established, that the legal title to all personal property of the deceased, vests in his legal representatives. They can dispose of it at pleasure, being responsible for the faithful execution of the trust; and can institute actions at law for the recovery of debts, as well as for the recovery of personal property." *Beecher* v. *Buckingham*, 18 Conn. 110, 120–21 (1846).

Accordingly, as a general rule, "[t]he proper suit, upon a cause of action arising in favor of . . . the decedent during [his or her] lifetime, is in the name of the fiduciary rather than of the heirs or other beneficiaries of the estate. . . . Actions designed to recover personalty belonging to the estate or for its use, conversion, or injury are brought by the fiduciary rather than by the beneficiaries." G. Wilhelm et al., Settlement of Estates in Connecticut (3d Ed. 2014) §§ 8:288 and 8:289, pp. 8-105 and 8-106; see also *Kosiorek* v. *Smigelski*, 138 Conn. App. 695, 706, 54 A.3d 564 (2012) ("[i]t is axiomatic that probate fiduciaries may commence legal action in their representative capacity"), cert. denied, 308 Conn. 901, 60 A.3d 287 (2013); *Naier* v. *Beckenstein*, 131 Conn. App. 638, 653 n.13, 27 A.3d 104 ("[i]t is of course true that a representative of an estate may pursue a cause of action . . . to pursue claims of the deceased"), cert. denied, 303 Conn. 910, 32 A.3d 963 (2011); *Silver* v. *Holtman*, 114 Conn. App. 438, 443, 970 A.2d 740 (2009) (executrix "has standing in her representative capacity to assert the rights of the estate" and was "the only person who has standing to bring these claims because of her representative capacity"); 31 Am. Jur. 2d 746, Executors and Administrators § 1093 (2012) ("the exclusive right to bring actions in behalf of an estate . . . is in the legal representative of the estate; the heirs have no standing to maintain such an action" [footnote omitted]); 26B C.J.S. 417, Descent and Distribution § 107 (2011) ("[w]here a personal representative has been appointed for an estate, an individual heir generally does not have the right to pursue an action for [the] benefit of the estate unless the personal representative fails to act on the claim" [footnote omitted]). The power of administrators or executors to litigate on behalf of an estate is codified in General Statutes § 45a-234 (18),[18] which provides in relevant part that they may "sue on or defend, abandon, or otherwise deal with and settle claims in favor of or against the estate . . . ."[19]

In turn, the administrator or executor,[20] as the designated fiduciary of the estate, "is the representative of all beneficiaries under [a] decedent's will." *Gaynor* v. *Payne*, supra, 261 Conn. 591. The administrator or executor thus "has a fiduciary duty to bargain for the rights of all decedent's beneficiaries and to turn over to them their appropriate share of any proceeds. The personal representative has a mandatory duty to seek out and collect every asset and to collect all debts due the estate, including debts due from heirs." (Footnotes omitted.)

31 Am. Jur. 2d, supra, § 369, p. 273; see also *Ramsdell* v. *Union Trust Co.*, supra, 202 Conn. 66 (if estate has "a viable claim" against third party, administrator or executor "has a fiduciary duty to bring such a claim on the estate's behalf"); *Satti* v. *Rago*, 186 Conn. 360, 367, 441 A.2d 615 (1982) (noting that "the relationship of the defendant administrator to the plaintiff heir was fiduciary in character" and emphasizing that administrator owed heir "a duty of equity and fair dealing in respect to any transaction of mutual concern"); *O'Connor* v. *Chiascione*, 130 Conn. 304, 307, 33 A.2d 336 (1943) (administrator "is a fiduciary for all persons interested in the estate"); *Butler* v. *Sisson*, 49 Conn. 580, 588 (1882) ("the law . . . presumes that an administrator will do his duty and gather in all the assets that he is able"); G. Wilhelm et al., supra, § 7:36, p. 7-24 (administrator has duty "to maintain an attitude of strict impartiality as between the beneficiaries and so govern her or his conduct to protect the legitimate interests of all"). With particular respect to an estate's claims against a beneficiary, "an heir ordinarily cannot maintain an action against a coheir to recover his or her share of the estate. As a general rule, only the administrator can maintain an action against a coheir to recover personal property belonging to the estate or for damages for conversion thereof." (Footnote omitted.) 26B C.J.S., supra, § 104, p. 415; cf. *Garrigus* v. *Viarengo*, supra, 112 Conn. App. 657–61 (administrator of estate prevailed in civil action alleging fraud, undue influence, statutory theft and unjust enrichment against defendant who was "one of the nieces named in the wills"). The plaintiffs have furnished this court with no authority indicating otherwise.

Nevertheless, an exception exists to the general rule precluding civil actions by heirs and beneficiaries on behalf of an estate. "[W]here the executor or administrator has been guilty of fraud or collusion with the party to be sued, or . . . where the interests of the personal representative are antagonistic to those of the heirs or distributees, the heirs or distributees may maintain actions relating to the personalty of the estate in their own names. Similarly, when the legal representative has failed or refused to act, the heir may maintain an action to recover assets for the benefit of the estate." (Footnotes omitted.) 31 Am. Jur. 2d, supra, § 1131, p. 764; see also *Kiley* v. *Lubelsky*, 315 F. Supp. 1025, 1028 (D. S.C. 1970) ("[i]t is contemplated that the administrator, properly appointed, will enforce any action which will discharge or carry out his trust responsibility, and if he fails, or tries to defeat the trust, the beneficiary can enforce his own cause of action acting as temporary representative"); *Schaefer* v. *Schaefer*, 89 Wis. 2d 323, 329, 278 N.W.2d 276 (App. 1979) ("an heir may be permitted to maintain an action to recover assets for the benefit of the estate in her own name when the executor or legal representative has failed or refused to act");

*Trotter* v. *Mutual Reserve Fund Life Assn.*, 9 S.D. 596, 600, 70 N.W. 843 (1897) ("[w]hen an administrator refuses to bring action upon a claim due the estate, heirs, creditors and others interested in its collection should have an adequate remedy"); 26B C.J.S., supra, § 107, p. 417 ("the heirs or distributees of the estate . . . may maintain actions to enforce or protect their interests in the estate . . . in case of fraud, collusion, or refusal to sue on the part of the administrator").

The General Statutes likewise contemplate such an exception to the general rule that the right to bring actions on behalf of an estate belongs to the legal representative. Section 45a-234 (18) vests in an administrator or executor the exclusive power "[t]o compromise, adjust, arbitrate, sue on or defend, abandon, or otherwise deal with and settle claims in favor or against the estate . . . as the fiduciary shall deem advisable . . . ." Yet that statute further provides that "the fiduciary's decision shall be conclusive between the fiduciary and the beneficiaries of the estate . . . *in the absence of fraud, bad faith or gross negligence of the fiduciary. . . .*" (Emphasis added.) General Statutes § 45a-234 (18). Our trial courts have applied such an exception in determining whether a beneficiary possessed standing to maintain an action alleging injury to an estate, albeit without specific reference to that statute. See *Dickman* v. *Generis*, 48 Conn. Supp. 380, 383–85, 845 A.2d 488 (2004); *Hart* v. *Hart*, Superior Court, judicial district of Windham at Putnam, Docket No. CV-14-6007918 (August 28, 2014); *Wright* v. *Wright*, Superior Court, judicial district of New Haven, Docket No. CV-05-4000024 (May 27, 2005). The question, then, is whether that limited exception is applicable in the present case.

The first two counts of the operative complaint allege a breach of fiduciary duty on the part of Douglas and Linda, respectively. Significantly, those counts do not allege that Douglas or Linda breached a fiduciary duty owed to William. Instead, they aver that Douglas and Linda breached a fiduciary duty owed to the "funds and assets" of the estate, to the detriment of William. The fourth and fifth counts for conversion and statutory theft allege, in part, that the defendants misappropriated "monies existing in various accounts, jewelry and personal property" belonging to Margaret. The plaintiffs thus allege that "[t]he estate of [Margaret] is entitled to possession of all personal property and monies owned by [Margaret] which were wrongfully disposed of by the defendants." Last, the plaintiffs' unjust enrichment count alleges in relevant part that the defendants "by taking and/or accepting gifts, personal property and monies belonging to [Margaret] or [her] estate . . . have all benefited from their own misconduct," and that they "did not pay [Margaret or her estate] for any of the benefits they received." As a result, the plaintiffs allege that "[t]he defendants have all been unjustly

enriched by virtue of their failure to pay [Margaret or her estate] for property owned by her or by her estate." The count further asserts that this conduct injured the estate, alleging that "the estate of [Margaret] contains considerably less assets than would otherwise be the case because of the conduct of the defendants." The plaintiffs' claim of injury is derivative thereof, alleging that "[s]ince the estate at death is considerably smaller than it should be, said conduct of the defendants has caused great harm and detriment to the plaintiff [William]." In sum, none of the aforementioned counts allege a colorable claim of direct injury to the plaintiffs. Rather, those counts allege direct injury to Margaret's estate.

We recognize the general rule that the exclusive right to bring actions on behalf of an estate belongs to the legal representative of the estate, and that heirs or beneficiaries lack standing to maintain such an action. At the same time, we also are mindful of the limited exception to that general rule, as codified in § 45a-234 (18). This case does not implicate that exception. Absent from the operative complaint is any allegation of fraud, bad faith, or gross negligence on the part of the administratrix of Margaret's estate. Contra *Dickman* v. *Generis*, supra, 48 Conn. Supp. 384 (emphasizing that operative complaint "is replete with claims of fraud and collusion and instances where the interests of the administrator . . . are antagonistic to those of the heirs or distributees"); *Hart* v. *Hart*, supra, Superior Court, Docket No. CV-14-6007918 (complaint contained allegations of undue influence, fraud, and partiality on part of executor); see also *Glover* v. *Landes*, 530 S.W.2d 910, 911 (Tex. App. 1975) ("[i]n our case there is no contention that the executor has failed to act, that he has an interest adverse to any of the devisees or that he is proceeding in behalf of persons having adverse interests") (writ ref'd n.r.e. March 3 1976). Moreover, the record before us reveals that the administratrix has taken action on behalf of the estate against the defendants.[21]

We conclude that the counts alleging breach of fiduciary duty and unjust enrichment, as well as those alleging conversion and statutory theft with respect to property belonging to Margaret, all plead injuries derivative of those allegedly sustained by her estate. They do not amount to colorable claims of direct injury to the plaintiffs. Accordingly, the plaintiffs lack standing to maintain those actions before the Superior Court. The court properly dismissed those counts for lack of subject matter jurisdiction.

The judgment is reversed only as to the dismissal of counts three, six and nine of the operative complaint, as well as counts four and five insofar as they pertain to the alleged misappropriation of property belonging to the plaintiffs, and the case is remanded for further

proceedings in accordance with law. The judgment is affirmed in all other respects.

In this opinion the other judges concurred.

[1] For clarity, and mindful of their shared last name, we refer to the parties individually by their first names in this opinion. We further note that, subsequent to the commencement of this action, the plaintiffs successfully moved to cite in the Estate of Margaret Geremia as an additional party, despite the fact that such an estate is not a legal entity. See *Gilpatric* v. *Hartford*, 98 Conn. 471, 476–80, 120 A. 317 (1923); 31 Am. Jur. 2d 741, Executors and Administrators § 1085 (2012) (estates "are not natural or artificial persons, and they lack legal capacity to sue or be sued"). Rather, the proper party to act on behalf thereof is the executor or administrator, "who individually transacts the business of the estate." G. Wilhelm et al., Settlement of Estates in Connecticut (3d Ed. 2014) § 7:4, p. 7-14. At oral argument before this court, the plaintiffs' counsel acknowledged that at no time did the plaintiffs move to cite in the administrator of Margaret Geremia's estate.

[2] In the present case, the operative complaint—the plaintiffs' October 16, 2013 first amended complaint—was accompanied by five exhibits, three of which were written rulings by the Probate Court dated September 13, 2011, June 21, 2012, and September 27, 2012. The only additional document appended to the defendants' motion to dismiss was a four paragraph letter from the plaintiffs' counsel to the Probate Court dated March 23, 2012.

[3] Joseph is Douglas' son.

[4] As the Probate Court recounted in its June 21, 2012 decision: "After the May 22, 2012 hearing, the parties proceeded to travel to Douglas' house in Wallingford . . . . Douglas proceeded to walk from the living room to a hallway leading to Margaret's bedroom. Boorman . . . went to follow Douglas down the hallway, but [Joseph] raced to get to the hallway first to prevent [him] from entering the hallway. Joseph admits to blocking Boorman from proceeding down the hallway . . . . Boorman testified that Joseph moved to one side, leaving enough room for him to pass by him and proceed down the hallway. However, as soon as Joseph realized what Boorman was doing, Joseph moved quickly in the other direction to pinch Boorman against the wall. Boorman then pushed Joseph off of him and against the opposite wall. . . . [Joseph] looked at him and he had 'the eyes of a caged animal.'

"There is not much dispute about what happened thereafter. Joseph came at Boorman with repeated punches with closed fists. The police report confirms that Joseph admitted . . . that he responded to Boorman's push by punching him in the face with a closed fist. . . . Boorman yelled for someone to call the police, and Niki Geremia did so. . . . Boorman was able to get a hold of both of Joseph's arms and prevent him from throwing any more punches. Boorman stated that Joseph tried to unsuccessfully kick him in the groin. . . .

"While all this was going on, Douglas had continued to Margaret's bedroom, retrieved the two envelopes containing the cash, and proceeded to the living room and put them on the coffee table. Boorman saw the envelopes and, as matters had calmed down somewhat, he released Joseph's right arm and used his left arm to pick up the two envelopes . . . . Joseph was slightly behind Boorman, and he used his free hand to punch Boorman near the left eye. Because of the way the men were situated, Boorman did not see the punch coming and was unable to defend against it, and he was hit squarely with a significant amount of force." (Citation omitted.) Boorman then proceed outside to wait for the police, where he counted the money and confirmed that the envelopes contained $8928.

[5] In its decision, the Probate Court stated that the plaintiffs' petition "was a companion application to the application of the conservator of the estate for the return of funds wrongfully removed from the estate." The record before us contains no further reference to, or documentation of, that application by the conservator.

[6] Pursuant to General Statutes § 45a-186 (a), "[e]xcept as provided in sections 45a-187 and 45a-188, any person aggrieved by any order, denial or decree of a Probate Court in any matter, unless otherwise specially provided by law, may, not later than forty-five days after the mailing of an order, denial or decree for a matter heard under any provision of section 45a-593, 45a-594, 45a-595 or 45a-597, sections 45a-644 to 45a-677, inclusive, or sections 45a-690 to 45a-705, inclusive, and not later than thirty days after mailing of an order, denial or decree for any other matter in a Probate Court, appeal therefrom to the Superior Court. . . ."

[7] Following Margaret's passing, Camera was appointed administratrix of

her estate.

[8] Although the operative complaint contains 131 paragraphs of factual allegations, the defendants' answer to those allegations stated simply that "[p]ursuant to Practice Book § 17-32 (b) and the order of the court . . . the defendants in this case deny all twelve counts in their entirety."

[9] We presume that the defendants' motion contains a scrivener's error, as § 54-345 does not exist. General Statutes § 51-345 specifies proper venue for civil actions in this state.

[10] The present case does not implicate the prior pending action doctrine, which "permits the court to dismiss a second case that raises issues currently pending before the court." *Cumberland Farms, Inc.* v. *Groton*, 247 Conn. 196, 216, 719 A.2d 465 (1998). Although "[t]he prior pending action doctrine is properly raised via a motion to dismiss before the trial court," it "does not truly implicate subject matter jurisdiction [and] may not, therefore, as is true in the case of classic subject matter jurisdiction, always be raised at any time." (Citation omitted; internal quotation marks omitted.) *In re Jessica M.*, 71 Conn. App. 417, 427, 802 A.2d 197 (2002); see also *Connecticut National Bank* v. *L & R Realty*, 46 Conn. App. 443, 445 n.1, 699 A.2d 297 (1997) (prior pending doctrine "may not be raised at any time" but, rather, must be raised by timely motion to dismiss), rev'd in part on other grounds, 246 Conn. 1, 715 A.2d 748 (1998). The defendants filed their motion to dismiss more than eleven months after the commencement of this civil action and did not raise the prior pending doctrine at that time. Although that doctrine potentially operates in instances in which an action is commenced in the Superior Court while a probate matter is pending; see *In re Jessica M.*, supra, 427; its applicability is not properly before us in this appeal, nor has any party so argued.

[11] "Concurrent jurisdiction has been said to mean the jurisdiction of several different tribunals, each authorized to deal with the same subject-matter at the choice of the suitor." (Internal quotation marks omitted.) *Second Injury Fund* v. *Lupachino*, 45 Conn. App. 324, 348, 695 A.2d 1072 (1997).

[12] In *In re Joshua S.*, our Supreme Court, in discussing "the jurisdictional limitations of the Probate Court," noted that "there are three types of actions in which the Superior Court does not exercise original jurisdiction: those involving the custody of a child not the issue of the marriage involved in a divorce, settlement of an executor's or administrator's account, and the question of due execution of a will." (Internal quotation marks omitted.) *In re Joshua S.*, supra, 260 Conn. 216; see also R. Folsom & G. Wilhelm, Probate Jurisdiction and Procedure in Connecticut (2d Ed. 2014) § 2:2, p. 2-15.

With respect to the settlement of estates, "[i]t has been held specifically that no court other than a Probate Court may decide questions of due execution of a will, order the sale of real estate in a decedent's estate, compel an executor to collect assets, fix an allowance for the support of the family pending the settlement of the estate, determine the compensation of the executor or administrator, settle an administration account, determine the persons entitled to funds coming into the hands of the administrator in the course of administration, ascertain distributees, order distribution, and partition the property among the distributees in order to complete the distribution. It also has been held that only a Probate Court may determine the solvency or insolvency of an estate, or the order of priority of claims or the percentages available to creditors in each class. . . . [T]he Probate Court is the only court competent to fix the bond of a life tenant under a will or appoint a trustee for such life tenant, or decide whether to order assets of a nonresident decedent remitted to the domiciliary executive or trustee." (Footnotes omitted.) Id., § 2:23, pp. 2-63 and 2-64.

[13] As the sole question before this court is whether the Superior Court properly determined that it lacked subject matter jurisdiction, we express no opinion on the legal sufficiency of the causes of action set forth in the plaintiffs' complaint. See *Caltabiano* v. *Phillips*, 23 Conn. App. 258, 265, 580 A.2d 67 (1990) ("[a] motion to dismiss does not test the sufficiency of a cause of action and should not be granted on other than jurisdictional grounds"); see also *Egri* v. *Foisie*, 83 Conn. App. 243, 247, 848 A.2d 1266 ("[t]here is a significant difference between asserting that a plaintiff *cannot* state a cause of action and asserting that a plaintiff *has not* stated a cause of action, and therein lies the distinction between the motion to dismiss and the motion to strike" [emphasis in original]), cert. denied, 271 Conn. 931, 859 A.2d 930 (2004).

[14] The jurisdiction conferred upon our courts of probate to determine title or rights of possession to such property also is constrained by the limitation set forth in General Statutes § 45a-98a (a) (1). That statute provides in

relevant part that the Probate Court shall have jurisdiction under § 45a-98 (a) (3) "*only if* . . . the matter in dispute is not pending in another court of competent jurisdiction . . . ." (Emphasis added.) Section 45a-98a (a) (1) evinces in unambiguous fashion a legislative intent to confer concurrent jurisdiction over such matters. It further operates to preclude our courts of probate from exercising jurisdiction over such matters that already are pending before the Superior Court.

[15] We recognize that, in the spring of 2012, the plaintiffs filed a request with the Probate Court to "issue orders" regarding the defendants' allegedly wrongful appropriation of funds and personal property belonging to Margaret, and that the Probate Court acted on that request in its September 27, 2012 decision. We further note that the defendants, as an alternate ground of dismissal, argued in their motion to dismiss that the Superior Court lacked subject matter jurisdiction over the plaintiffs' complaint due to the doctrines of res judicata and collateral estoppel. That proposition is untenable. Admittedly, our Supreme Court has recognized that "Probate Court decrees . . . are final judgments for the purpose of the doctrine of res judicata." *Gaynor* v. *Payne*, 261 Conn. 585, 596, 804 A.2d 170 (2002). Nevertheless, "[r]es judicata does not provide the basis for a judgment of dismissal; it is a special defense that is considered after any jurisdictional thresholds are passed." *Labbe* v. *Pension Commission*, 229 Conn. 801, 816, 643 A.2d 1268 (1994); see also *State* v. *T.D.*, 286 Conn. 353, 360 n.6, 944 A.2d 288 (2008) ("the doctrine of collateral estoppel does not implicate a court's subject matter jurisdiction [and even] when applicable . . .does not mandate dismissal of a case" [citations omitted]); *Zizka* v. *Water Pollution Control Authority*, 195 Conn. 682, 687, 490 A.2d 509 (1985) (claim of res judicata does not implicate subject matter jurisdiction of court). Whether those doctrines of preclusion operate to bar any of the plaintiffs' claims before the Superior Court, therefore, is not a proper basis on which to predicate a motion to dismiss for lack of subject matter jurisdiction. Those doctrines properly are raised by motion for summary judgment. See *Jackson* v. *R. G. Whipple, Inc.*, 225 Conn. 705, 712, 627 A.2d 374 (1993); *Zizka* v. *Water Pollution Control Authority*, supra, 687.

[16] A constructive trust is an equitable remedy imposed to prevent unjust enrichment. *Cohen* v. *Cohen*, 182 Conn. 193, 203, 438 A.2d 55 (1980). "[A] constructive trust arises . . . against one who, by . . . abuse of confidence . . . either has obtained or holds the legal right to property which he ought not, in equity and good conscience, hold and enjoy." (Internal quotation marks omitted.) *Wendell Corp. Trustee* v. *Thurston*, 239 Conn. 109, 113, 680 A.2d 1314 (1996).

[17] In moving to dismiss this action, the defendants did not raise any issue with respect to the plaintiffs' standing. Mindful that a question of subject matter jurisdiction "may be raised at any time, including sua sponte invocation by a reviewing court"; *DePietro* v. *Dept. of Public Safety*, 126 Conn. App. 414, 422 n.3, 11 A.3d 1149, cert. granted on other grounds, 300 Conn. 932, 17 A.3d 69 (2011) (appeal withdrawn June 26, 2012); see also *Smith* v. *Snyder*, 267 Conn. 456, 460 n.5, 839 A.2d 589 (2004) ("[w]e raise this issue of standing sua sponte as it implicates our subject matter jurisdiction"); we ordered the parties to file supplemental briefs on the question of standing following oral argument before this court.

[18] The Uniform Probate Code likewise provides in relevant part that "a personal representative, acting reasonably for the benefit of the interested persons, may properly . . . (22) prosecute or defend claims, or proceedings in any jurisdiction for the protection of the estate . . . ." Unif. Probate Code § 3-715.

[19] In rejecting an attempt to intervene by certain heirs seeking to appeal an adverse ruling on a claim defended by the administrator of the estate in question, the Colorado Court of Appeals articulated a principal rationale underlying the general rule that the right to bring and defend actions on behalf of an estate belongs to the legal representative of the estate, rather than heirs or beneficiaries thereto. As that court stated: "[T]here are substantial problems with basing the right to intervene upon various questions as to how or in what manner a law suit should be prosecuted. When the law created a mechanism whereby one person as a representative of a group could conduct litigation, the purpose was the efficient, speedy, and orderly determination of rights which were held in common. For the courts to grant intervention to any member of a represented class who disagrees with the decisions of the representative, solely on that basis, would in our view defeat the entire purpose of representative litigation. A personal representative, under such a rule, would always be in danger of losing the ability to

represent and act for the estate and might well find himself relegated to a position of looking on as the affairs of the estate became hopelessly entangled. It seems hardly likely that the General Assembly when it clothed the personal representative with far reaching affirmative powers, could have intended for his position to be so fragile." *In the Matter of the Estate of Scott*, 40 Colo. App. 343, 346, 577 P.2d 311 (1978); see also *State ex rel. Palmer* v. *District Court*, 190 Mont. 185, 189, 619 P.2d 1201 (1980) ("any other rule would promote a multitude of suits by heirs, resulting in hopeless confusion with respect to the prosecution of an action").

[20] "[B]oth executors and administrators substantially derive their authority from the same source—the court of probate. The former are designated by the testator—the latter by statute. Both must receive the approbation of the court, before they are duly qualified to act." *Beecher* v. *Buckingham*, supra, 18 Conn. 121–22.

[21] As recounted in the September 27, 2012 decision of the Probate Court, Camera filed an application "for the return of funds wrongfully removed from the estate," which led the Probate Court to conclude that defendants Douglas and Linda were liable for $24,000 in "wrongful" withdrawals from the assets of Margaret's estate.

---